G. W. O'Brien, Surviving Partner, v. Gilliland & Armstrong, Executors.

No. 266.

1. **Errors which will Not Reverse.**—Errors were committed by the court below in the admission of evidence and in the instructions to the jury, but no other judgment could have been rendered under the law upon the facts of the case than that which was rendered. In such case the plaintiff suffered no injury, and the judgment must be affirmed.

2. **Cash Sale by Land Broker.**—A land agent authorized to sell only for cash, contracted a sale for half cash and the balance in four and eight months, and testified that he desired the title made to himself, and that he would have made the title to the purchasers. taking their vendor's lien notes for the unpaid purchase money, which he could have placed in bank and gotten the cash for, with which he would have paid to the vendor the cash price fixed by him upon the land. It being further shown by his testimony that he relied upon the purchasers and upon the notes to be executed by them for the means with which to realize the cash necessary, and that if they had failed to comply with their agreement there would have been no sale, *held*, that this was not a cash sale, and not

having been consummated, that the land agent was not entitled to recover compensation for making it.

**3. Land Agent, when not Entitled to Commissions.** — The terms of sale were explicit, and the proposal to fulfill should have been equally so. Nothing should have been left to speculation or conjecture. The broker must complete the sale; that is, he must find a purchaser in a situation ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions.

APPEAL from Jefferson.    Tried below before Hon. W. H. FORD.

*Douglas & Lanier* and *O'Brien & O'Brien*, for appellant, in printed brief of sixty-two pages, discuss thirty-one assignments of error.—The court erred in instructing the jury, that they must find that C. Dart must have been ready, willing, and able to pay the cash for the land, immediately upon the delivery of the deed from the defendants to him, when the evidence showed that it had been stipulated in Dart's letter to O'Brien of June 1, 1889, that the deed and title papers should be sent to the First National Bank of Houston for inspection, before being delivered, and the payment of the money.    Gilliland v. O'Brien, 83 Texas, 635; O'Brien v. Gilliland, 79 Texas, 602; Casady v. Seely, 29 N. W. Rep., 932; Pottvin v. Curran, 13 Neb., 302; Budd v. Zoller, 52 Mo., 238; Ducloss v. Cunningham, 102 N. Y., 678; Gross v. Stevens, 32 Minn., 472; Love v. Miller, 53 Ind., 294; Mooney v. Elder, 56 N. Y., 238; Knapp v. Wallace, 41 N. Y., 477; Gottschalk v. Jennings, 45 Am. Dec., 70; Gray v. Burke, 19 Texas, 228; Heldt v. Webster, 60 Texas, 207; Frisby v. Withers, 61 Texas, 134; Medlin v. Wilkins, 60 Texas, 409; Traylor v. Townsend, 61 Texas, 144; Bigham v. McDowell, 69 Texas, 100; Lee v. Yandell, 69 Texas, 34; Railway v. Kuehn, 70 Texas, 583; Burcham v. Game, 1 Posey's U. C., 333; Calef v. Thompson, 81 Ill., 478; Ins. Co. v. Earle, 33 Mich., 143; Jones v. Jones, 57 Mo., 138.

*Greer & Greer*, for appellees.—Where the verdict of the jury is rendered on the established facts, and is the only verdict the law would permit, the charge of the court, however defective, or any other error subsequent to the closing of the case on the evidence, is immaterial, and will not require reversal.

PLEASANTS, ASSOCIATE JUSTICE.—This is the third appeal in this cause, having been twice appealed to the Supreme Court. The decisions of that court upon the two appeals are reported in 79 Texas, on pages 602, 603, and 604, and in 83 Texas, from page 635 to page 649.

The appellant sues the appellees for the recovery of commissions upon the alleged sale of certain lands belonging to the estate of appellees' testator, made by appellant, under an alleged contract between him and ap-

pellees, by which appellant was engaged to make sale of said lands for appellees. The will of James Armstrong gave the executors power to sell all the lands of the testator; and it directs that no action should be had in the Probate Court in relation to the estate of the testator, other than the probating of his will and the filing of an inventory of his property. The petition alleged, that plaintiff was originally employed conjointly with one John, appellant and John being at the time partners in the business of buying and selling lands for others, and that before the sale was perfected the partnership was dissolved by the death of John; and that after said dissolution, appellees employed appellant, upon the same terms and conditions upon which the contract with O'Brien & John was made, to make sale of said lands; and the suit was prosecuted for the benefit of the plaintiff and of the estate of John. The defendants answered by general and special demurrers and by general denial, and several special pleas of defense. Trial was had on June 3, 1892; verdict for defendants, and judgment thereon rendered that the plaintiff take nothing by his suit, either in his individual right or as surviving partner of the firm of O'Brien & John; and plaintiff's motion for a new trial having been overruled, he appealed to this court.

The assignments of error are numerous, and several of them, in our judgment, are well taken, and for errors of the court committed in the admission of evidence over the objections of plaintiff, and in its instructions to the jury, as pointed out in appellant's brief, the case would have to be reversed, but for our conclusion, that notwithstanding these errors, no other judgment could have been rendered under the law, upon the facts of the case, than that which was rendered. Under our view of the law, the errors of the trial court did the plaintiff no injury, and the judgment must be affirmed. The evidence is conflicting as to the employment of the plaintiff by appellees, as it is on several other issues presented by the pleadings; but there is no conflict whatever in the evidence as to what was done by the plaintiff in the performance of his alleged engagement with appellees to effect a sale of their lands. The petition avers, that plaintiff made sale of the lands on the 1st day of June, 1889, to one C. Dart, for the price fixed by appellees, to-wit, $3 per acre, and that after due notice to them of the sale, the appellees, without cause, wrongfully disavowed plaintiff's contract with the purchaser, and refused to execute deed to him.

Says Mechem in his work on Agency, pages 964, 965, and 966: "The broker must show, before he can recover commissions, that he has completed his undertaking according to its terms, or that its completion was prevented, without his fault, by the principal. What constitutes completion, however, is a question of no little difficulty in many cases, depending, as it does, upon vague and indefinite agreement between parties." "The duty of the broker is performed when he has found a

purchaser ready, willing, and able to purchase upon the terms specified, or if no particular terms were agreed upon, when he produces a purchaser to whom the principal sells.''

The will of appellees' testator authorized the sale of his lands for cash only; and plaintiff was not authorized to sell except for cash. C. Dart, a land broker in the city of Galveston, was engaged by the plaintiff to assist him in effecting the sale; and he made an agreement with Messrs. Lutcher & Moore, of Orange County, to purchase the lands at $3.25 per acre, one-half cash, and the balance in two equal installments, payable in four and eight months, the deferred payments to be secured by promissory notes of the purchasers, with a lien on the land. By telegram and by letter, Dart advised plaintiff, on the day of its consummation, of this sale, and requested plaintiff to have deed executed by the executors to him, Dart, and sent to the First National Bank of Houston; telling plaintiff, that while the sale was for only half cash, he would be able to raise the other half by negotiating the notes of the purchasers, and thus meet the requirement of the will and the terms of the sale specified in the contract between O'Brien and the executors. The plaintiff promptly advised the executors of the agreement between Dart and Lutcher & Moore, and of Dart's intention to advance a sufficient sum to make good to the executors the full price of the land, cash in hand. The executors did not execute the deed, assigning several reasons for not doing so.

Upon the trial, the witness Dart testified: '' I received a letter from Lutcher & Moore, saying they would take the Armstrong league and the Joseph Taylor 640 acres at $3.25 per acre, and would pay for them one-half cash, one-fourth in four months, and one-fourth in eight months. I wrote to them the lands belonged to an estate, and could only be sold under the will by the executors for cash; but that I could discount their notes and pay cash for the lands, the deeds to be made to me; and I also wrote to the same effect to Mr. O'Brien.'' In reply to question by counsel for plaintiff, whether the money would have been ready when the deeds were ready for delivery, the witness replied: '' Certainly, the money could have been raised in half an hour. I could just have walked to the bank and have gotten the money. I considered the sale conclusive, so far as the question of cash was concerned. When the deed executed to me came to the bank, I could have executed a deed to Lutcher & Moore; they could have executed their notes to me. I could have gotten the money on them and paid to the executors the cash, all in one transaction. As soon as the papers could have been turned over, the money would have been there to pay Captain O'Brien the $3 per acre for the land. Lutcher & Moore had agreed to take it from me at $3.25 per acre; that is what they were to pay me. * * * I was engaged in buying and selling lands. I was not buying on my own account at all. If

Lutcher & Moore had refused to take them, I presume I would not have taken them from the estate; would not have taken any lands at all, unless I had sold them first. I intended to get the money through Lutcher & Moore's paper, given with a lien on the lands. The paper was to be made payable to me, certainly. If I had failed in the negotiation of those notes, there would have been no sale. It was necessary for the title to have gone out of executors and into Lutcher & Moore before the notes were signed. I was not going to pay for the lands until I sold Lutcher & Moore's notes. Deeds could have been deposited in bank, and the whole transaction closed at the time. I expected to get the money from the bank in Houston. Lutcher & Moore stated, when we were talking to them in Orange about it, in October, 1889, that they had had the money on hand ever since the trade was closed. There was no trouble about payment at all. The money could have been raised as soon as the papers were deposited in the bank. As soon as we met in Houston, the money would have been there; am satisfied of that. The discount would have been taken out of the 25 cents per acre, as the executors had to have $3 per acre.''

This testimony of the plaintiff's witness Dart is the only evidence in the record touching his readiness, willingness, and ability to purchase the lands upon the terms agreed upon between the plaintiff and the executors, as stated by plaintiff in his petition; and we are unanimously of the opinion that the evidence is insufficient to warrant a recovery by the plaintiff. Dart's inability and his want of readiness to comply with the terms of the sale, upon delivery of the deeds to him, is clearly shown by his own testimony, when he declares he did not intend to pay the money until he had negotiated the notes of Lutcher & Moore, and that he could not do this until he had conveyed the lands to them after receiving a deed from the executors, and that had he failed to negotiate the notes he would not have taken the lands from the estate. The declaration of this witness, that there would have been no difficulty whatever in negotiating the notes of Lutcher & Moore, and thus paying for the lands, is but the opinion of the witness. The terms of the sale were explicit, and the proposal to fulfill should have been equally so. Nothing should have been left to speculation or conjecture. Certainty in the offer to fulfill is as important to the vendor as are the terms of the sale to the vendee, and equally necessary before the vendor can be put in fault. The broker must complete the sale; that is, he must find a purchaser in a situation ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions. McGavock v. Woodlief, 20 How., 221; McCarty v. Cavens, 66 Iowa, 342.

Applying the law as we find it announced in the treatise, and in the decisions cited above, to the facts of this case, we can find no escape from the

conclusion, that the plaintiff, however honestly he may have labored in the service of the appellees, has not shown himself entitled to recover in this suit.

The judgment of the lower court is affirmed.

*Affirmed.*

Delivered September 21, 1893.