W. A. EVERMAN ET AL. *v.* THOMAS HERNDON ET AL.

$\begin{array}{|c|c|} \hline 71 & 823 \\ \hline f85 & 304 \\ \hline \end{array}$

1. AGENCY.  *Real estate broker.  Authority.*

The agency of a real estate broker extends only to bringing seller and buyer together.  In the absence of express authority, he is not empowered to sell his customer's land, or to bind him by a contract for a sale.

2. SAME.  *Dealings with agent.  Extent of authority.*

One dealing with an agent expressly appointed to do a particular act must inform himself of the extent of authority conferred and see that the act done is within it.  *Brown* v. *Johnson,* 12 Smed. & M., 398.

3. CONTRACT.  *Proposition.  Acceptance.  Assent.  Identity.*

Where, after some correspondence, a real estate broker writes his customer that he can sell his land (800 acres) for four thousand dollars, one-half cash, balance in one and two years, at eight per cent. interest, to which the customer telegraphs, " accept four thousand dollar proposition," the broker is not authorized to make a binding contract to sell for *cash.*

4. SAME.  *Agency.  Scope of authority.  Case.*

A contract by a real estate agent to sell land for a designated amount, a part of which is accepted at the time, is a contract to sell for cash, and is not binding on the owner, who has only authorized the agent to sell for the amount, payable in one and two years, with eight per cent. interest.

5. SAME.  *Specific performance.  Offer in alternative.*

In such case the purchaser cannot have specific performance by offering to pay the price in cash, or to pay half cash and execute notes for the balance, with interest, for that would be to make a contract by construction different from that agreed upon by the agent.

FROM the chancery court of the first district of Coahoma county.

HON. W. R. TRIGG, Chancellor.

Bill for specific performance, or for damages for breach of an alleged contract to sell land.   Decree for defendants.

The opinion states the facts.

*W. A. Percy*, for appellants.

It is not alleged by complainant in his pleadings that the. trade was to be for cash, or in what manner the $5 per acre was to be paid. Complainants, therefore, offered to perform their contract by paying all cash for so much as the vendor was able to convey. The mistake of defendants' counsel is in supposing that complainants aver that the terms of their contract with Herndon are contained in the paper executed by Cross Bros. on June 15, 1889. What they aver is that, on that day, they did enter into a contract to purchase the lands of Herndon at the price of $5 per acre, and they afterwards, by their amendments, set out a voluminous correspondence, the paper of June 15 among them, and aver that the terms of the contract can be gathered from all the papers on file.

This correspondence shows that Herndon recognized the agency of Cross Bros. On the former appeal, this court held that all the papers under the allegations of the bill could be looked to to ascertain the terms of the contract. So far as the contract of sale signed by Cross Bros. is concerned, it did conform to the contract which they were authorized to accept, and, when this contract is construed with the other papers in the case, the full terms of the trade are shown, and they agree with complainants' version of the same.

*D. A. Scott*, for appellees.

The contract made by Cross Bros. is plainly one for $5 per acre cash. The construction sought for by appellants is strained. In no sense can it be considered as a contract for the sum of $4,000, to be paid in one and two years, at eight per cent. interest. The idea of interest is not to be found in it. The mere tender by appellants of the whole sum at $5 per acre would be to comply with the terms of that contract. Nothing in the correspondence gave Cross Bros. authority to make a sale upon the terms evidenced by the written contract. The only power they had was to find a purchaser and

have Herndon close the trade. Unless it is clear that the agent was authorized to make a contract and sign it, there is no such power. *Schultz* v. *Griffin*, 121 N. Y., 294, s.c. 18 Am. St. Rep., 825; 19 Am. St. Rep., 514; 6 Am. Rep., 620.

COOPER, J., delivered the opinion of the court.

On a former appeal in this cause the question involved was as to the sufficiency of the description of the subject-matter of the contract to relieve it of objection under the statute of frauds, and we then held that it was permissible to look to all the writings signed by Herndon in the negotiation leading to the sale, and that, by so doing, it sufficiently appeared what land was intended to be sold. *Everman* v. *Herndon*, 11 So. Rep., 652.

The question involved in this appeal is whether the defendant, Herndon, is bound by the contract of sale entered into by Cross Bros., who professed to be authorized by and to act for him, by which they agreed to sell to appellants, Everman and Blanton, the lands now sued for. When the cause was remanded on the former appeal, the parties were at issue upon the original and amended bills, and proceeded to take depositions preparatory to final hearing thereon. During the taking of the deposition of the defendant, Herndon, a fuller disclosure of certain parts of the correspondence between this defendant and Cross Bros. led the complainants to exhibit a second amended bill, to which the defendant demurred, and his demurrer was sustained. The cause was then set for final hearing upon the original and first amended bill and exhibits, answers and proof, and on such hearing the original and amended bills were dismissed. The errors assigned bring into review the decree sustaining the demurrer to the second amended bill and the decree made on the final hearing. Under our practice in chancery, exhibits filed with a bill are a part of the bill, and are considered on demurrer as if copied in the bill. Code 1892, § 528.

By the second amended bill the entire correspondence

between Cross Bros. and the defendant, Herndon, is set out *in ipsissimis verbis* either in that bill or in the exhibits to the original bill referred to, and made a part of the second amended bill.

It is evident on the whole record that the complainants do not rely upon the creation of an agency in Cross Bros. for the defendant, Herndon, except by this correspondence, none of which is denied by the defendant. · On this branch of the case the same question was presented on the hearing of the demurrer and on final hearing, and, since the cause is finally disposed of by us on the question common to both, we shall deal with the two decrees as one.

It is contended by counsel for appellants that, in the correspondence between the defendant, Herndon, and the firm of Cross Bros., authority was conferred upon said firm, as agents for this defendant, to sell the lands in controversy at the price of $5 per acre cash, and that the communications between these parties on the fifth, sixth, tenth and thirteenth of June (which is hereinafter specifically set out) was not in derrogation of the agency before that time existing; that, if it be true that the memorandum of sale executed by Cross Bros. on June 14 (which is also hereinafter set out) would not be a valid execution of the agency created by the telegrams and letters of June 5, 6, 10 and 13, it was authorized by the agency before that time conferred on them.

Counsel for appellants do not point to the writing antedating the telegram of June 6, by which the agency of Cross Bros. to sell the land was created, nor have we been able to discover any such authority from the correspondence. It does appear that Cross Bros. desired to be authorized either to sell the land for the defendant, Herndon, or to secure the right to commissions on a sale to be made, if they could find a purchaser for the land.; but there is nothing in the correspondence antedating June 6 from which it could be deduced that Herndon had appointed them as his agents, or that they so understood. The only agency we can discover in the cor-

respendence is that created by the letter and telegram from
Herndon of date June 6, which were in reply to the commu-
nication from Cross Bros. of date June 5.   On June 4, Hern-
don, in reply to a letter from Cross Bros., asking him to fix
the price of the land, and also asking at what price he would
sell the timber thereon, wrote as follows:

"CLARKSVILLE, TENN., June 4, 1889.
"*Mr. John L. Cross:*

"DEAR SIR—Your favor to hand and contents noted.   I
would sell my land in Mississippi for $5 per acre cash.   Can
give perfect title.   Would ask about the same for timber as
for land and all.   Mr. Ham has my plot.   I sent it to you,
and, after I got it back, I sent it to Ham.   Write him for it."

On June 5, Cross Bros. wrote to Herndon as follows;

"MEMPHIS, TENN., June 5, 1889.
"*T. Herndon, Esq., Clarksville, Tenn:*

"DEAR SIR—In reply to your letter, will say I think I can
sell your place for four thousand, (800) acres; one-half cash,
balance in one and two years, with 8 per cent. from date.
Please inform me if I must close at that price and terms.
Wire at my expense.   Resp.                    CROSS BROS."

On June 6, Herndon sent this telegram to Cross Bros.:

"CLARKSVILLE, TENN., June 6, 1889.
"*Cross Bros., Real Estate Agents:*

"Accept the four thousand dollar proposition.   If neces-
sary, will come Friday night.               T. HERNDON."

On the same day Herndon wrote to Cross Bros. as follows:

"CLARKSVILLE, TENN., June 6, 1889.
"*Messrs. Cross Bros., Memphis, Tenn.:*

"GENTS—Your favor to hand and noted.   There are 830
acres in my tract, and I propose to put it at $5 per acre.   My
deeds are all on record in Coahoma county, Miss.

"Yours, etc.,         .              T. HERNDON."

In reply to the telegram from Herndon, Cross Bros. on the same day telegraphed to Herndon as follows:

"MEMPHIS, June 6, 1889.

"T. Herndon, Clarksville, Tenn.:

"Proposition accepted.   Particulars by mail.

"CROSS BROS."

Several other letters passed between Herndon and Cross Bros. after June 6 and before June 15, but they are unimportant.   On June 15 the following written contract was signed by Cross Bros.:

"MEMPHIS, TENN., June 15, 1889.

"This is to certify that we have this day sold to Everman and Blanton 830 acres of ground in Coahoma county, Miss., for the sum of $5 per acre, and owned by Captain Thomas Herndon, of Clarksville, Tenn., and we, Cross Bros., being said Thomas Herndon's authorized agents.   And we hereby accept the sum of ($200) two hundred dollars as part payment on said land.   Witness our hand, this fifteenth day of June, 1889.        CROSS BROS."

It does not appear that the terms of this instrument were communicated to Herndon by Cross Bros. or by Everman and Blanton until after he had assumed the position that Cross Bros. had not been his agents to make any contract of sale whatever of the lands.   There is an absence, therefore, of evidence of ratification by him of the act of Cross Bros. in attempting to bind him by the sale.

It seems to have been assumed by all the parties that Everman and Blanton were to be the purchasers of the land, for Messrs. Perkins & Percy, their attorneys, made an investigation for them of Herndon's title, in which certain irregularities and deficiencies were disclosed.   This fact having been communicated to Herndon, he employed these gentlemen to perfect his titles, which they proceeded to do.   In writing to Herndon, Messrs. Perkins & Percy frequently called his attention to the fact that Messrs. Everman and

Blanton expected him to carry out the contract of sale with them; but its terms were not stated, and Herndon, in his replies, seems to have uniformly refrained from making any reference to it. Finally, however, he stated in a letter to his attorneys that he had concluded not to sell the land. In reply to this, Messrs. Perkins and Percy wrote him that Everman and Blanton declined to release him from the contract, and would insist upon its execution. In reply to this, Herndon wrote that he had made no contract with them, and had not authorized Cross Bros. to make any, and that he would not sell the land.

The validity of the agreement made by Cross Bros., professing to act for Herndon, must, therefore, rest upon the fact that they were his agents, authorized to enter into the contract with Everman and Blanton, and thereby to bind them. As we have said, there is nothing in the record showing that, prior to June 6, any other relation had existed between Cross Bros. and Herndon than that of broker and customer, and, in that relation, it is well settled that the agency of the broker extends only to bringing the parties together. He is not authorized to make sale of the customer's land, or to make a contract of sale binding on him. 2 Am. & Eng. Enc. L., 592; *Morris* v. *Ruddy*, 20 N. J. Eq., 236; *Roach* v. *Coe*, 1 E. D. Smith, 175; *Grant* v. *Ede*, 85 Cal., 418, s.c. 20 Am. St. Rep., 237; *Duffy* v. *Hobson*, 40 Cal., 240; *Walker* v. *Osgood*, 93 Am. Dec., 168, notes.

The principal may, however, authorize the broker to make a contract of sale or to execute the conveyance; but, in such cases, the broker, like other agents, must act within the delegated authority. Looking to the only authority given by Herndon to Cross Bros. to make sale of the lands, it is found to be limited to that of accepting "the four thousand dollar proposition." The telegram in which this authority was given created whatever agency existed in Cross Bros. to make a contract of sale. This firm was thus specially authorized to do and perform one particular act—viz., to ac-

cept a definite proposition which had before then been submitted to Herndon. Nothing is better settled in the law than that one dealing with an agent expressly appointed to do a particular act, must inform himself of the extent of authority conferred, and must see to it that the act done is within the authority. *Bank* v. *Cameron*, 3 Smed. & M., 609; *Brown* v. *Johnson*, 12 *Ib.*, 398.

There was no fact to which Everman and Blanton might justly appeal tending to prove that any other agency than that created by the telegram existed, and it did not authorize Cross Bros. to make the contract which they made on the fifteenth day of June. They were authorized "to accept the four thousand dollar proposition," which was to pay that sum, one-half in cash and the balance in one and two years, with interest at eight per cent. per annum from date. They entered into an agreement, under which the whole purchase-price was payable in cash, which may have been a better or worse contract than that they were authorized to make, determinable by circumstances, but which was certainly not the contract they were directed and empowered to make. In legal effect, here was an offer by Herndon to sell his land at a fixed price, one-half in cash and the remainder in one and two years, with interest at eight per cent., and a counter-proposition by Everman and Blanton to buy at the price named, payable in cash. There is not a legal identity between the contract which Cross Bros. were authorized to make and the one they attempted to make, and their principal, Herndon, was not bound. *Batty* v. *Carswell*, 2 John., 48; 1 Am. Leading Cas., 653; *Schultz* v. *Griffin*, 121 N. Y., 294, s.c. 18 Am. St. Rep., 825.

The complainants in their pleadings refrained from averring in what manner the purchase-money was to be paid by them, but averred a willingness to pay the entire sum in cash, or to pay one-half cash and execute their notes for the remainder at one and two years, with interest at eight per cent., and they contend that, since, by the terms of the agreement,

it was not expressly provided how the purchase-money should
be paid, it may and should be inferred from all the circum-
stances that it was understood, and, therefore, agreed to be
paid at such time as the proposition submitted to Herndon
had specified, whereby the proposal by Cross Bros., its accept-
ance by Herndon, the agency created by him, and the act of
the agent in its execution would be harmonized.   But this
would be to make a contract by construction different from
that actually entered into by the parties.   Clearly, under the
written agreement signed by Cross Bros., the complainants
would have been entitled to make instant payment of all the
purchase-price of the land, and to a demand by Herndon that
they should retain a part of it on interest, might have well
replied that such was not a part of the contract made by his
agents in the sale of the land.   Both parties or neither must
be bound by the contract.   *Cooke* v. *Oxley*, 3 T. R., 653.   In
other words, both parties must in fact assent to the terms of
the contract (or, what is equivalent thereto, one must assent
and the other must be precluded in law from denying that
he did assent) before either is bound.   1 Chitty on Con-
tracts, 20.

Looking through the whole record, we find that the de-
fendant, Herndon, agreed to sell his land for $5 per acre, one-
half in cash and the balance in one and two years, with inter-
est at eight per cent.   The complainants agreed to buy at the
price named, but the purchase-money was to be paid in cash.
Cross Bros. were authorized by Herndon to make sale on the
terms of his offer; they in fact made an agreement for him
to sell on the different terms of complainants' offer, which
act on their part was never ratified by Herndon.   On these
facts the law is with the defendant, and the decree of the
court below is

*Affirmed.*