## JEPSEN v. MAROHN et al.

Defendant employed plaintiff to sell certain real estate for $4,-200, payable $2,200 down, $1,000 in one year, and $1,000 in two years, interest at 10 per cent. **Held**, that plaintiff did not perform his engagement so as to entitle himself to commissions by procuring a purchaser ready, able and willing to purchase the land for $4,200 in cash.

Where a broker, authorized to sell land for $4,200 payable in installments, did not perform his engagement by finding a purchaser for $4,200 in cash, the fact that the landowner declined the purchaser's tender of $4,200 in cash, because "it wasn't enough," was not material on the question of the broker's right to recover commissions.

(Opinion filed, February 10, 1909.)

Appeal from Circuit Court, Lawrence County. Hon. 'W. G. Rice, Judge.

Action by Victor R. Jepsen against Charles C. Marohn and another. Judgment for plaintiff, and defendants appeal. Reversed.

*Geo. B. Thompson,* for appellants. *Thos. L. Redlon,* for respondent.

CORSON, J. This action was instituted by the plaintiff, a real estate agent of Lead City, to recover of the defendants a commission of 5 per cent on the sale of certain property placed in his hands for sale by the defendants and claimed to have been earned by him. Verdict and judgment being in favor of the plaintiff, the defendants have appealed.

The action was based upon a written contract entered into by the defendants, as parties of the first part, and the plaintiff, as party of the second part, in which it was stipulated that the said parties of the first part authorized the said party of the second part, as their agent, to sell and dispose of the real estate therein described for the consideration of $4,200, payable as follows: $2,-200 down, $1,000 in one year, and $1,000 in two years; interest at the rate of 10 per cent. per annum. And it was further stipulated that the parties of the first part were to pay the said party of the second part the sum of 5 per cent on the consideration price for selling and disposing of said real estate. It was further stipulated that the said contract "should be in force and effect for the term or period of sixty days, and thereafter until three days' notice in writing" should be given that it had been withdrawn from said parties' hands. It is disclosed by the evidence: That, soon after the expiration of 60 days, verbal notice was given the plaintiff that the defendants withdrew the property from sale, but no written notice was shown to have been given; that about 18 months after the execution of this contract the plaintiff produced a purchaser who made a tender of $4,200 in cash for the property, which was refused by the defendants; that when the tender was made to Mrs. Marohn she said she could not take it, and she would have to telephone to her husband first. Subsequently two or three days later a tender of $4,200 was made to Mr. Marohn, and he refused to accept it, saying, "it wasn't enough." It will be observed that by the

terms of the contract the said plaintiff was authorized to sell the
said real property "for the sum of $4,200 payable as follows: $2,-
200 down, $1,000 in one year, and $1,000 in two years; interest at
the rate of 10 per cent per annum." But that the tender was $4,200
in cash.

At the close of the trial the defendants requested the court to
give the following instruction: "You are instructed that, under a
contract for the sale of property like the one in question, it is the
duty of the agent to procure a purchaser who is ready, willing, and
able to take the property on the exact terms as specified in the con-
tract of agency, and that, unless the agent produces a purchaser
who is willing to take the property on the exact terms as specified
in his contract, he is not entitled to recover his commissions for a
purchaser found who is willing to take it on any terms, unless such
terms have been agreed to by the owners of the property. Should
you therefore find that the plaintiff in this action did not produce
a customer who was ready to purchase the property on the terms
specified in said contract, to wit, $4,200, to be paid $2,200 in cash,
$1,000 in one year from date of sale, and $1,000 in two years from
date of sale, with interest at 10 per cent per annum from date, then
your verdict should be in favor of the defendants and against the
plaintiff." Which instruction was refused, and defendants duly ex-
cepted. The court in its charge to the jury gave them the following
instruction: "Now, gentlemen of the jury, in reference to the law
of tender, I charge you as a matter of law that the law is that when
one person makes a tender to another, and the tender is not ac-
cepted, and the person to whom the tender is made bases his re
fusal to receive the tender upon certain specified objections, such,
for instance, as that the amount is insufficient, he cannot after suit
is brought raise other objections which might have been easily
remedied at the time, if they had been made then. Now, as to that
tender, gentlemen of the jury, if you believe from the evidence in
the case that the tender was made of $4,200, and that there was a
specified objection made to it at the time by the owners of the prop-
erty, but at the time of the tender they made no objection that the
$4,200 was not offered in the manner provided by the contract—
that is, part of it in cash, $2,200, and $1,000 in one year, and $1,000

in two years, with interest at 10 per cent per annum—if they failed to make that objection and made other specific objections as to the tender, then they would be estopped thereafter as to making the objection that it had not been specified in the amounts and mortgages as therein provided. In other words, the tender of $4,200, if made, having been made, if at the time of the tender the parties to whom it was made raised specific objections to it, then thereafter they are bound by those specific objections as made."

We are of the opinion that the court erred in refusing to give the instruction requested by the defendants, and also erred in its instructions to the jury upon the subject of tender. The plaintiff was only authorized to sell the property upon the terms specified, and until he should find such a purchaser ready, willing, and able to comply with those terms he was not entitled to any commission. No such purchaser was produced by the plaintiff, but it appears from the evidence that he did produce a purchaser who was willing to take the property at the price of $4,200 specified in the contract, but only ready to take the property and pay therefor in cash. As to such a purchaser the minds of the parties had never met. The defendants may have been willing to dispose of the property upon the terms specified in the contract, viz., $2,200 cash and the balance in one and two years at 10 per cent interest; but they might not have been willing to make any contract authorizing the plaintiff to sell the property for $4,200 in cash. Hence they were not bound to give any reasons for their refusal to accept a purchaser on terms entirely different from those proposed by them in their contract. The learned circuit court seems to have adopted the erroneous theory that if the defendants refused to accept the money and refused to accept the contract proposed to them by the plaintiff, at the time of the tender, they were estopped from denying that they made such a contract because they failed to give as the reason for not accepting the tender that the amount tendered was in cash and not in accordance with the terms of the contract. This position was clearly untenable, and the fact that the defendant Marohn stated "it wasn't enough" is not in our view of the case material. The contract, as will be seen, was executed by the defendants and the plaintiff and kept by the plaintiff, and he knew

therefore what the terms on which he was authorized to make the sale were, and he is presumed to know that until those terms were complied with he had no right to make a tender of any other sum or in any other manner than that specified in the contract, unless the terms of the contract were changed by the consent of the defendants.

There was no question of estoppel involved in this case; the only question being as to whether or not the plaintiff had produced a purchaser ready, willing, and able to comply with the terms of the contract. Clearly he produced no such purchaser, but sought to substitute an entirely different contract from that he was authorized to make, which latter substitute was not accepted by the defendants. Stearns v. Clapp, 16 S. D. 558, 94 N. W. 430; Richards Trust Company v. Beach, 17 S. D. 432, 97 N. W. 358; Monson v. Kill, 144 Ill. 248, 33 N. E. 43; Jackson v. Badger, 35 Minn. 52, 26 N. W. 908; O'Brien v. Gilliland, 4 Tex. Civ. App. 40. 23 S. W. 244; 11 Am. & Eng. Ency. of Law, 434; Everman v. Herndon, 71 Miss. 823, 15 South. 135. In the latter case the Supreme Court of Mississippi, in deciding a similar question, held that: "After preliminary correspondence, a real estate broker wrote to defendant, stating that he could sell defendant's land * * * for $4,000, one-half cash, balance in one and two years at 8 per cent. interest. Defendant telegraphed, 'Accept the $4,000 proposition.' Held not to authorize the broker to contract to sell for cash." And that court in its opinion says: "They were authorized to accept the $4,000 proposition, which was to pay that sum one-half in cash, and the balance in one and two years, with interest at 8 per cent per annum from date. They entered into an agreement under which the whole purchase price was payable in cash, which may have been a better or worse contract than that they were authorized to make, determinable by circumstances, but which was certainly not the contract they were directed and empowered to make. In legal effect, here was an offer by Herndon to sell his land at a fixed price, one-half cash, and the remainder in one and two years, with interest at 8 per cent, and a counter proposition by Everman & Blanton to buy at the price named, payable in cash. There is not a legal identity between the contract which Cross Bros.

were authorized to make and the one they attempted to make, and their principal, Herndon, was not bound." The view expressed by that learned court meets with our approval and is in accord with our own decisions. In Stearns v. Clapp, supra, this court held: "Where a landowner wrote plaintiff that he would sell the land for $1,400 net, in reply to which plaintiff wrote that the offer was accepted, and that the deed, when executed, should be sent to a bank, to be turned over to plaintiff on payment to it of $1,400, and that, if the owner had an abstract, he should send it with the deed, or write the bank to allow for one to be made, plaintiff's letter constituted a new proposal, and there was no contract." And to the same effect is Richards Trust Company v. Beach, supra. Numerous other errors are assigned and discussed in the brief of counsel, but in the view we have taken of the case we do not deem it necessary to discuss or decide them at this time.

We are clearly of the opinion that, for the error of the circuit court in refusing to give plaintiff's fifth instruction requested, and in the error committed by the court in its instructions to the jury upon the subject of tender, the judgment of the court below should be reversed, and it is so ordered.