### HICKS v. NORTON.

(Court of Civil Appeals of Texas. San Antonio. March 19, 1913. Rehearing Denied April 16, 1913.)

1. BROKERS (§ 54*)—COMMISSION—RIGHT TO.

If a prospective purchaser produced by a broker failed to purchase solely because of his inability to do so, the broker cannot recover a commission because of any defect in the principal's title pointed out by a stranger to the transaction.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75-81; Dec. Dig. § 54.*]

2. VENDOR AND PURCHASER (§ 93*) — CONTRACT TO CONVEY—CANCELLATION.

Where a contract purchaser defaulted in making a stipulated payment April 19, 1910, the vendor was entitled to cancel the contract May 30th, having notified the purchaser May 28th of his intention to cancel, unless the payment was made on or before May 30th.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 153, 154; Dec. Dig. § 93.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Victoria County; John M. Green, Judge.

Action by E. G. Hicks against George W. Norton. Judgment for defendant, and plaintiff appeals. Affirmed.

McFarland & Lewright, of San Antonio, for appellant. C. R. Wharton, of Houston, for appellee.

TALIAFERRO, J. This is an action by an agent to recover, under an alleged contract, commissions for the sale of land. The case was tried without a jury, and resulted in a judgment for appellee, the defendant below.

Appellant's first, second, third, and fourth assignments of error assail the judgment of the court as contrary to and unsupported by the evidence.

We have carefully read and considered the record, and find the conclusions of fact and law by the trial court, upon which he based his judgment, to be so admirably clear, concise, and correct that we adopt them as our opinion:

Findings of Fact.

"G. W. Norton, of Louisville, Kentucky, executor of the estate of his deceased father, employed E. G. Hicks, plaintiff herein, as a broker to sell certain lands belonging to the estate and situated in Victoria county, Texas. The employment was made by correspondence between the parties, which is in evidence, and which shows, in substance:

"(1) That Hicks was to receive a 5 per cent. commission on the sale of any of these lands made by him, this commission payable at the close of the sale to the satisfaction of Norton.

"(2) Following this correspondence, Hicks procured a purchaser, who agreed to pay $10 per acre for a tract of 6,720 acres, $1,000 cash until the titles were approved, and then to make a total cash payment of $1 per acre, and give vendor's lien notes for the balance. This offer was sumbitted to Norton on the 23d of February, 1909. Norton declined to accept the offer as submitted, saying he could not consider giving a deed, unless at least one-fourth of the consideration was paid in cash, but proposed to give a contract of sale instead of a deed; the purchaser paying at the time this contract was executed $1 per acre, and to be entitled to a deed when he paid a total cash payment, including the $1 per acre, equal to one-fourth of the purchase price of the land. When this counterproposition was made by Norton, he advised the plaintiff that if the sale was made by the contract of sale he would only pay a commission of 5 per cent. from time to time, as and when the consideration for these lands was received in cash, but could pay the balance of the commission at any time the parties made a payment entitling them to a deed, as above provided.

"(3) This counterproposition was accepted by plaintiff and by plaintiff's proposed purchaser, W. T. Carruthers, and it was the understanding between the parties that plaintiff should procure his commission as outlined in the foregoing paragraph No. 2, and that if the purchaser, Carruthers, should fail to make a cash payment entitling him to a deed, and the sale was not consummated to the satisfaction of the defendant, Norton, then no commission should be paid.

"(4) The purchaser, Carruthers, deposited $1,000 as earnest money to bind the deal until the abstracts were furnished; 30 days being taken in which to have the abstracts furnished and titles passed upon. At the expiration of that time he paid the balance of $1 per acre, making a total of $6,720 paid. He procured a contract of sale which was in words and figures as follows:

"'This agreement, made this 19th day of April, A. D. 1909, by and between George W. Norton, executor of George W. Norton, deceased, of Louisville, Jefferson county, Kentucky, party of the first part, and W. T. Carruthers, of Victoria county, state of Texas, party of the second part, witnesseth:

"'That in consideration of the stipulations herein contained, and the payments to be made by the said party of the second part, to sell to the said party of the second part all of those certain tracts or parcels of land, situated in the county of Victoria and state of Texas, containing six thousand, seven hundred and twenty (6,720) acres, more or less, in all, and described as follows, to wit: [Then follows a general description of the 10 sections of land, not necessary for this discussion.]

"'The above-mentioned lands have been sold to the said party of the second part for the sum of sixty-seven thousand two hundred dollars ($67,200.00), of which sum six thousand seven hundred and twenty dollars ($6,720.00) is cash in hand paid by the said party of the second part to the said party of the first part, the receipt of which is hereby acknowledged; and the balance of said purchase money, say sixty thousand four hundred and eighty dollars ($60,480.00), the said party of the second part hereby binds himself to pay as follows: On or before the 19th day of April, 1910, the sum of fifteen thousand one hundred and twenty dollars ($15,120.00); on or before the 19th day of April, 1911, the sum of fifteen thousand one hundred and twenty dollars ($15,120.00); on or before the 19th day of April, 1912, the sum of fifteen thousand one hundred and twenty dollars ($15,120.00); on or before the 19th day of April, 1913, the sum of fifteen thousand one hundred and twenty dollars ($15,120.00); all of said payments to bear interest at the rate of seven per cent. (7 per cent.) per annum, payable annually, from date hereof.

"'The said party of the second part hereby

binds himself further to pay all taxes which may be assessed against said lands for the year 1909 and thereafter.

"'It is understood and agreed that the party of the second part shall be entitled at any time to receive a deed from the party of the first part for all of the above-described lands, whenever he shall have paid the sum of sixteen thousand eight hundred dollars ($16,800.00), together with all interest on the total deferred payments up to the date of such payment, and shall execute and deliver to said first party his notes for the balance of the consideration, in amounts, of the maturities, and with the rate of interest, etc., hereinbefore provided, such notes to be secured by vendor's lien upon the land conveyed.

"'Upon the payment of the total consideration for said lands and interest at any time, the party of the first part shall execute and deliver to the party of the second part a deed, substantially of the form hereto attached.

"'It is further agreed that said second party shall be entitled to a deed for any whole section, hereinbefore described, whenever he shall have paid upon the same the sum of sixty-four hundred dollars ($6,400.00) of principal and all accrued interest, and an additional sum of twelve hundred and eighty dollars ($1,280.00) per section, to be applied as a credit upon the balance of the consideration due on the whole purchase.

"'In case the said second party should desire a deed for any half section of the above lands, the amount of principal to be paid by him shall be fixed by the party of the first part, at the time of such request, by a valuation of the two halves of the section in question in such way that the average amount required to be paid to entitle the said second party to' deeds for such section shall not exceed twelve dollars ($12.00) per acre.

"'It is understood and agreed, however, that if default shall have been made in the payment of any of the amounts due under this contract, or upon failure to comply with any of the provisions of. same, the party of the first part shall not be required thereafter to deliver a deed or deeds for the whole or any part of said lands, as above provided, except upon the payment of the total balance of consideration and interest.

"'It is understood and agreed that in case said party of the second part shall fail to pay promptly any of the sums of principal and interest at the dates above provided, or any part of either, or shall fail to perform any of the conditions of this agreement, then this contract, so far as it binds said party of the first part, shall become null and void, and all rights and interests hereby created in favor of the said party of the second part shall cease, and the premises hereby contracted and all improvements which may have been placed thereon shall be surrendered to the said party of the first part, as likewise all moneys which may have been paid, without any right of the said party of the second part of reclamation or compensation for moneys paid or services performed.

"'The deferred payment notes, as above provided for, shall be substantially of the form hereto attached.

"'The party of the second part hereby binds himself not to remove nor allow to be removed any of the timber from any timbered section or half section embraced in this contract, until all the payments pertaining to such tract shall have been fully paid and satisfied.

"'In testimony whereof, witness our hands and seals the day and year first above written.   George W. Norton, Executor of George W. Norton, Deceased.   W. T. Carruthers.'

"(6) At the time the said Carruthers executed this contract, he was not financially able to purchase this land, but expected to resell it during the year allowed in which he could perfect the purchase and make sufficient profits out of such resales to enable him to perform his contract with Norton.  He did not have the abstract furnished him critically examined by an attorney, but made inquiry about the title, and satisfied himself that it was good, and had no objection thereto.

"(7) By the terms of the contract of purchase above referred to said Carruthers had one year—that is, until April 19, 1910—in which to make the cash payment equal to one-fourth of the total purchase price of the land and procure the deed, and a failure to perform this on his part canceled the contract and worked a forfeiture of the payment made to the said Norton.

"(8) Immediately prior to the expiration of the one year, Carruthers found himself unable to perfect the purchase, and applied to one Waelder, a banker and money lender at Victoria, Texas, to advance him money to perfect the sale, and Waelder agreed to make the advances under terms satisfactory to Carruthers, if the title should be approved by his (Waelder's) attorneys.  Thereupon the abstract was submitted to the attorneys for Waelder, and on the 20th day of April, 1910, they reported to him adversely upon the title, and he declined to advance Carruthers the money.

"(9) Carruthers procured this opinion and forwarded it to Norton, stating that he was unable to raise the money on account of these objections, but at the same time stating that his (Carruthers) attorneys felt the title was absolutely good, and that he (Carruthers) believed it so to be.  Norton replied, furnishing opinions of other attorneys meeting the objections urged by the attorneys for Waelder, and Carruthers submitted these to his attorneys and reported to Norton that his attorneys said that the objections urged to the title were fully met.

"(10) Carruthers then sought modifications

and extensions of the original contract. In the meantime the deed from Norton to Carruthers had been forwarded to Victoria, with draft attached for a cash payment. Norton refused to make any modifications to the original contract proposed by Carruthers, but did not cancel the contract for nonfulfillment on the 19th of April, 1910. Considerable correspondence passed between them, in which Carruthers repeatedly urged and requested modifications and extension to the original contract, but these were at all times declined by Norton.

"(11) On the 28th of May, 1910, the contract not having yet been canceled, Carruthers went to Louisville; he having wired Norton that he was coming to close the deal. When he reached there, however, he did not have the money with which to close it, and Norton advised him that, unless the money was placed in the bank at Victoria not later than Monday, May 30th, with which to take up the deed, and unless he (Norton) had a telegram from either Holland, Buhler, or Waelder advising that the money was placed in the bank for that purpose, the contract would be canceled. Carruthers failed to make the cash payments, or make an arrangement for the payments just referred to, and was unable to do so, and on the 30th of May the contract was canceled, and thereafterwards Norton refunded Carruthers his $6,720 purchase money and allowed him certain commissions on some of the resales of portions of the land that had been made by him."

### Conclusions of Law.

"(1) The plaintiff did not furnish a purchaser ready, willing, and able to buy; Carruthers was at no time able to purchase said land according to contract.

[1] "(2) Defendant, Norton, did not have the power of sale of this land. * * * But this question becomes unimportant in this case, because Carruthers accepted the title. The objections raised were not raised by him, nor by his attorneys, but by Mr. Waelder, a stranger to his contract with defendant. Even after this opinion he was anxious to take the land, and his failure to purchase was due, not to defects in the title, but to his want of financial ability to buy this land and perform his contract.

[2] "(3) Norton never agreed to any extension of time to Carruthers for any definite period; but he waited till May 30, 1910, to cancel said contract, which was a reasonable time, and he had a right to cancel it at said time."

See Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; O'Brien v. Gilliland, 4 Tex. Civ. App. 44, 23 S. W. 244; Carter v. Owens, 58 Fla. 204, 50 South. 641, 25 L. R. A. (N. S.) 737; De Cordova v. Bahn, 74 Tex. 643, 12 S. W. 845; Granger Real Est. Ex. v. Anderson, 145

S. W. 262; Clark v. Wilson, 41 Tex. Civ. App. 451, 91 S. W. 627.

Appellant's subsidiary propositions from 1 to 16 show no error, and the judgment of the lower court is in all things affirmed.