[Civ. No. 2631. Second Appellate District, Division One.—July 16, 1919.]

## HENRY HAY, Appellant, v. W. I. HOLLINGSWORTH et al., Respondents.

[1] CONTRACTS — FAILURE TO CONVEY LAND — REFUSAL OF OWNER TO APPROVE TRANSACTION — GOOD FAITH OF AGENTS — ACTION FOR DAMAGES—EVIDENCE—GENERAL DAMAGES.—In this action by an undisclosed principal against the agents of the owner of a tract of land for damages for refusing to carry out a contract for the sale and conveyance of a portion thereof, the contract with plaintiff's agent having expressly provided that such sale was subject to the approval of the owner of the property, and such approval having been refused, the court was justified in concluding that the defendants did not act in bad faith in failing to complete the deal, and, therefore, in refusing general damages.

[2] ID.—PLEADING—RECOVERY OF DEPOSIT.—Where the complaint in such action attempted to set forth a cause of action for breach of contract and also a cause of action for the return of the deposit paid on the purchase price at the time of entering into the contract, but no demurrer was interposed to the complaint, other than the general one that it failed to state facts sufficient to constitute a cause of action, the plaintiff was entitled to a judgment for the return of such deposit.

[3] ID.—AGENT OF UNDISCLOSED PRINCIPAL—PARTIES.—In such action, the agent of the undisclosed principal was not a necessary party plaintiff, even though he was to have had some interest in the property.

[4] ID.—REFUSAL OF APPROVAL BY OWNER—RECOVERY OF DEPOSIT— TENDER.—Where the agreement in such case expressly provided

that the transaction was subject to the approval of the owner, and such approval was refused, the purchaser was not bound to offer to make the further payments on the purchase price as a condition precedent to the recovery of the deposit paid by him.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

Davis, Kemp & Post for Appellant.

J. Wiseman Macdonald, O'Melveny, Stevens & Millikin, Walter K. Tuller and O'Melveny, Millikin & Tuller for Respondents.

JAMES, J.—Plaintiff appeals from a judgment entered for defendants on a directed verdict, and also from an order made denying his motion for a new trial.

In December, 1910, defendant Hollingsworth held an agency agreement with the Keating Estate authorizing him, under certain limitations and restrictions, to dispose of real property belonging to that estate. Defendant Marsh had made a conditional arrangement to purchase some of this property. J. O. Downing desired to purchase fifty acres of the land which Marsh was endeavoring to secure, and he negotiated with Marsh, with the result that he made a deposit of two thousand five hundred dollars, for which a receipt was issued to him by Hollingsworth in the following words:

"Received of J. O. Downing the sum of twenty-five hundred (2500) dollars, as a deposit and part of the purchase price, an additional fifteen hundred (1500) dollars to be paid on or before December 14th, 1910, also as a deposit and part of the purchase price of the following described real property situate in the county of Los Angeles, state of California: Being the southeast quarter of lot three (3) as shown on map prepared by W. I. Hollingsworth, said map being of the Keating Estate property, containing fifty (50) acres, a little more or less. Full purchase price of said property to be eleven hundred (1100) dollars per acre, terms of sale one-third

(⅓) of the purchase price, including the above mentioned deposits, to be paid on or before January 15th, 1911; balance to be paid in three equal annual payments bearing interest at the rate of six (6) per cent net, payable semi-annually. The Keating Estate agrees to give a good and sufficient deed and certificate of title, showing the title to be free and clear of encumbrance, through the Title Guarantee and Trust Company. Said company to give a declaration of trust covering the above points. The said company to reserve the discretionary power to date the transaction and said deferred payments shall become due in one, two and three years from said time. This deposit is taken subject to the approval of the Keating Estate. If title is not good, this deposit to be returned.

"W. I. HOLLINGSWORTH & Co.,
"Per W. I. HOLLINGSWORTH,
"Agent."

Marsh and Downing attached their names to this receipt, under the word "approved," below the signature of Hollingsworth. It will be noted that the deposit was taken upon the express condition that the sale should be approved by "the Keating Estate." In passing we may pause to remark that it appeared to be the evident intention, judging from the wording of the instrument, that the approval of the Keating Estate should precede the requirement that more money should be paid by Downing under the terms agreed upon. There is no dispute at all under the evidence but that the Keating Estate refused to approve this sale; that Downing was notified to that effect and it was stated to him that he might have back the two thousand five hundred dollars first deposited. Mr. Hollingsworth in the course of his testimony said: "In the latter part of February or the first of March [1911] Mr. Downing called on me in regard to the matter, and I telephoned for Mr. Marsh to come down to my office and he did. I told him we had tendered the balance of our first payment to the Trust Company and had been refused. Mr. Marsh repeated over, I think, again what I said and told him we had made a strong effort to try and get the contract fulfilled, but had failed. Mr. Marsh told Mr. Downing he

would be glad to return the two thousand five hundred dollars. Mr. Downing said he didn't want it. He said he would not take it. I never told Mr. Downing that I had any interest in the purchase which Mr. Marsh was making. I had no interest. I told him Mr. Marsh's money entirely at the time made the purchase." At another point in his testimony Mr. Hollingsworth said: "I told Mr. Downing at least two times that he could have his money back at any time he wanted it." He said further: "I remember about the 15th of January [1911] we had a talk about the matter. That was the time when he should have completed the first payment, and I said to him, 'Mr. Downing, I am very much in hopes of carrying this through for you at that time. But you can have your money.'" Without further stating the evidence, we may again repeat that there was no claim made by either of the defendants that they were ever able to fulfill their contract with Downing. They accepted his deposit of two thousand five hundred dollars conditionally only and the condition never occurred which enabled them to complete the transaction; they notified Downing that they could not complete it. This action was brought in the name of Hay to recover damages for breach of contract by reason of the failure of the defendants to convey. It was alleged that in making the purchase Downing acted as the agent for Hay, Hay being an undisclosed principal. In the prayer of the complaint damages in the sum of twenty-five thousand dollars was first asked for upon the theory that, as borne out by some of the allegations in the complaint, the defendants had not acted in good faith in refusing to carry out the deal, but refused because it was of greater interest to them to take that course. The second item of damage for which recovery was asked—the deposit of two thousand five hundred dollars—was predicated upon a statement of the facts of the transaction, together with this allegation found in the complaint: "That the defendants in this action, since the thirteenth day of December, 1910, have retained the said sum of two thousand five hundred dollars paid by the plaintiff to the defendants, and have not at any time offered to return the said sum, or any part thereof, notwithstanding the fact

42 Cal. App.—16

that the said defendants on the twenty-ninth day of March, 1911, refused to carry out any of the terms and conditions of said contract on their part, and the said sum of two thousand five hundred dollars, together with interest thereon from the thirteenth day of December, 1910, is due, owing, and unpaid from the defendants to this plaintiff.'' Separate briefs have been filed on behalf of defendants. [1] We think argument is unnecessary to sustain the judgment refusing general damages because of alleged breach of contract to convey the real property. In that particular we think that the evidence was sufficient to authorize the court in concluding that defendants did not act in bad faith in failing to complete the deal, and that the particular sale contemplated under the receipt issued to Downing was refused approval by the Keating Estate. Such being the case, the contract necessarily failed of consummation and Downing's only right was to recover the two thousand five hundred dollars deposited. We have noted that this money was in words offered back to him and that he announced that he would refuse to accept it.

[2] Defendant Marsh, by his counsel, makes the contention that the complaint was inconsistent, first, in that there was attempted to be alleged a cause of action for breach of contract which necessarily assumed the existence of a contract, and, secondly, a cause of action for the return of the two thousand five hundred dollars, to sustain which the assumption must be indulged that there was no contract. No demurrer was interposed to this complaint, except the general one that it failed to state facts sufficient to constitute a cause of action. No special ground was alleged against its form or substance. That being true, if sufficient facts can be gleaned from the complaint to show a cause of action for the recovery of the two thousand five hundred dollars, disregarding the other allegations, then as to that branch of the case the complaint must be held sufficient; and we think the facts are so sufficiently stated. To be sure, the terms of the receipt are not fully exhibited in the complaint, especially as to the condition that approval should be had of the Keating Estate; nevertheless, it is alleged that the deposit was made and that the defendants failed to complete their part of the transaction. The ultimate fact, we think, was sufficiently stated, although the facts as shown in evidence not only explained

and justified the refusal of defendants to make conveyance, but showed that they had in good faith offered to return the two thousand five hundred dollars and that Downing had refused to accept the same. However, on the evidence presented to the court, we can see no legal reason why Downing should not have recovered the two thousand five hundred dollars he deposited.

A number of additional questions concerned in the controversy are quite elaborately argued in the brief of defendant Hollingsworth. At the outset we agree with the contention of this defendant that no recovery should have been had against him for the deposit money, because Downing's deal was made with Marsh. The evidence sufficiently shows this to be the case. Downing in his testimony stated that when he paid the two thousand five hundred dollars to Hollingsworth, Hollingsworth stated to him that it was Marsh's money and that he would give it to him. As our conclusion just announced as to this defendant puts him out of the controversy, it is unnecessary to give particular attention to much of the further argument presented by his brief, although we will notice one or two of the main propositions, as they are matters which apply equally to the codefendant. Attention has already been called to the fact that this transaction was entered into on the one part by J. O. Downing. The reason that this action was brought in the name of Hay was explained by Downing. Downing testified that while he acted apparently in his own right in making the deal with defendants, he in truth was the attorney in fact for Hay and that it was Hay's money which he expended and was to expend on account of the purchase of the land. He testified that he was to have had some interest in the returns from the property, but the testimony was clear to the fact that the money expended was Hay's and that Hay was the principal party entitled to be represented in the transaction. **[3]** We think there is no merit in the contention that Downing should have been joined as a party because of some after-interest which he was to have in the land had it been secured. The question of the right of an undisclosed principal to sue in his own name in a transaction of this kind, is made the subject of a lengthy argument in one of the briefs. It is stoutly contended that the contract attempted to be made between Down-

ing and the defendants, or Downing and Marsh, was one in which there could be no substitution of an undisclosed principal against the wishes of the other contracting parties. This on the familiar ground that a person generally has the right to choose the party with whom he will contract and that it will be assumed, where the real principal is totally undisclosed, that such parties looked to the individual honesty, credit, and standing of the person who afterward claims to be only an agent, and that they have the right to insist upon the contract being carried out as to parties precisely as made. There is. no disputing this rule; it is a familiar one and applies to a variety of conditions and cases, but has no application here. In the first place, this is not an action to compel specific performance, and there are no obligations to be performed in the future for which Downing's credit and standing may be available to defendant Marsh. The benefits to be derived from a transaction may always be assigned, and they may likewise always be enforced by an undisclosed principal where full consideration has been rendered by the agent. (2 Mechem on Agency, 2d ed., secs. 2062, 2063, et seq.) We may add that there never was a completed contract in this case. The deposit was taken as a preliminary and the receipt issued; these things having occurred with the express condition that the approval of the Keating Estate should be secured before the parties were to become bound to the further terms agreed upon. That approval was not secured and the negotiations were closed and terminated. There was nothing more for Downing to do, but there did remain in the hands of Marsh the two thousand five hundred dollars belonging to Hay, which Marsh was bound to return.

[4] It is contended further that even as to the two thousand five hundred dollars, this money could not be recovered by the depositor until he had offered to perform the further conditions set forth in the memorandum. As we construe those terms, the depositor was entitled to have an approval of the deal made before he would be called upon to pay any more money. Conceding that he was not so entitled, nevertheless it was announced at about the time the second payment became due, and continuously thereafter, that defendants were unable to procure the approval of the Keating Estate, and they offered

that Marsh would return the money deposited. The case is not at all like that of *Mattingly* v. *Pennie,* 105 Cal. 514, [45 Am. St. Rep. 87, 39 Pac. 200], where a broker sought to recover a commission when he had not produced in sufficient manner a buyer who was ready, able, and willing to purchase. The court there held that he could not rely upon the statement that the vendor would refuse to sell, and in order to complete his right to a commission he must do those things which are well established to be requisite to the earning of brokerage. In this case the refusal of the Keating Estate to approve the sale of the land had put an end to the deal between the parties, and it is an admitted fact that any tender made by Downing on his own or his principal's behalf would have been absolutely fruitless of results.

For the reasons which we have stated, we think that the court was in error in part, in that the jury should have been allowed to find for the plaintiff as against defendant Marsh in the sum of two thousand five hundred dollars. This without interest, because Downing had refused to accept the money at the different times it was offered to him.

The judgment and order are reversed.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 12, 1919; and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 11, 1919.

All the Justices concurred.