[Civ. No. 3381. First Appellate District, Division Two.—June 30, 1920.]

LEWIS CRUICKSHANK, as Executor, etc., Appellant, v. ALICE BERTHA VOGH, as Administratrix, etc., et al., Respondents.

[1] APPEAL—ACTION TO ANNUL REMAINDER—CONTRACT FOR SUPPORT —CONSIDERATION—FINDINGS—EVIDENCE.—In a suit to have it determined that a remainder dependent on a life estate in the plaintiff be annulled, if there is sufficient evidence to support the findings of the trial court to the effect that the plaintiff failed to prove to the satisfaction of the court that the alleged contract for support by defendants' decedent was made and that there was no consideration for the conveyance of the remainder to such decedent, the appellate court, even though it might have reached a different conclusion, cannot substitute its judgment for that of the trial court.

[2] ID.—JUDGMENT—FINDINGS—EVIDENCE.—The appellate court can-
not disturb a judgment when it is supported by findings which
are themselves sustained by the evidence.

APPEAL from a judgment of the Superior Court of Los
Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lewis Cruickshank and Vincent B. Vaughan for Appel-
lant.

Jesse R. Shafer for Respondents.

BRITTAIN, J.—The plaintiff appeals from a judgment in
a suit to have it determined that a remainder dependent on
a life estate in Sarah Arnold, deceased, be annulled.

In the complaint the original plaintiff, Sarah Arnold, set
up three causes of action. Her death occurred after the
trial and the appellant as the executor of her will was sub-
stituted as plaintiff. The facts beyond dispute are that the
plaintiff was an elderly and sick woman, but of undimin-
ished mental ability. She was the aunt of Arnold Vogh
and had lived with him, or he with her, until he was about
thirteen years of age. He also was sick. He had married
the principal defendant. Mrs. Arnold had come to Cali-
fornia from Mississippi and was living with the Voghs.
They treated her kindly and took care of her. She paid
the grocery bills. Vogh was employed in a mill and his
health was failing. Mrs. Arnold was advised to go to the
mountains and the Voghs accompanied her. She purchased
for four thousand five hundred dollars the property in suit,
causing the deed to be made to her as the life tenant, with
remainder over to Vogh. She purchased lumber for two
small dwellings which Vogh had practically completed, when
a short time after he had given up his position he went to
the hospital to undergo an operation. He died on October 1,
1911. The deed was dated September 4, 1911, acknowledged
September 7th and recorded September 22, 1911.

In the first cause of action the plaintiff alleged that the
consideration for causing the remainder to be conveyed to
Vogh was his promise that he would take care of her for
the remainder of her life, and that by reason of his death

without having made provision for her care; and because of
the failure of his wife and of his estate to provide for her,
the consideration for the conveyance had wholly failed. The
second cause of action was based on allegations of fraud
and undue influence, and it has been abandoned by the
appellant. The third cause of action contained the formal
allegations of a suit to quiet title to the property, of which
the plaintiff alleged she was the owner. She also alleged
that the defendants claimed some interest adverse to her,
without right. The prayer was that the provision of the
deed, which was set up as an exhibit, vesting an estate in
remainder in Vogh, be declared void, and that the plain-
tiff's title be quieted. The court found that the first and
third causes of action were barred; that Vogh did not agree
to give the plaintiff personal care and attention through life,
and that there was a sufficient consideration for the convey-
ance. The appellant attacks each of these findings and
makes no other contention. If the findings in regard to the
contract and the consideration for the conveyance are sup-
ported by the evidence, the error, if error there were in
applying the bar of the statute, is immaterial.

The only direct evidence concerning the contract for sup-
port is that of the plaintiff. She testified that Vogh pro-
mised to care for her during her life, and that when she
went to the office of the title company and directed the deed
to be made to her, he took her out into the hall and told her
he would not go on to the place, he and his wife, unless she
put his name in the deed with his wife's. Subsequently, on
learning of pending divorce proceedings between Mrs. Vogh
and her husband, the plaintiff directed the deed to be made
in its final form. At the time of the conversation, she testi-
fied, in reply to a direct question as to whether he had made
any promises or not, that he said, "You know you need care
and attention and we are willing to give it to you—that is
what I want to do."

Mrs. Traveis, formerly Mrs. Vogh, testified that Mrs. Ar-
nold had said "she had provided for the rest of them, that
is, that she had done something for the rest of them and
that her husband had promised to give Mr. Vogh something
for the name of Arnold, and she would buy a home, and
then give it to him. She didn't say where then, until some-
body told her to go to the mountains. . . . And after we

moved up there with her, she said she would buy some cows and put him in the dairy business. That is all that was ever said, that is the same thing talked over every time. There was never anything said in my presence by Mrs. Arnold or Mr. Vogh about him giving his personal care and attention during the rest of his life; she said when she got better she was going back to Mississippi to her home." Another witness for the defendant testified that "She said she would give him a place if he would come up there and she told him she bought the lumber to build the house, and if he built two houses it would be to his advantage, for when she got better she was going back to Mississippi, where she came from, and then it would all be his, or to be her house; he would have it if he would build the two houses. It would be no disadvantage to him, is the way I remember it now. That is what I heard her say to him, him to her, and they were talking between each other. That is as far as I know about that."

Mrs. Arnold was not recalled to rebut this evidence of Mrs. Traveis. Parts of the testimony of Mrs. Arnold in regard to when she first learned that she could not sell the property after the death of Vogh and in regard to other collateral matters were shaken by cross-examination and were contradicted by other witnesses. She gave some testimony which could only have been addressed to the second cause of action based on fraud and undue influence, but it was of so weak a character that those claims were abandoned. While it is unhappily true that elderly persons far too often make the mistake typified by that of King Lear, and courts are disposed to relieve them from their improvident acts upon any substantial showing of over-reaching or fraud, still courts cannot from motives of sympathy either annul deeds or make contracts after the death of one of the parties except upon the clearest evidence both upon the subject of the existence of the contract and its terms. As was said by the supreme court, speaking by Mr. Justice Van Fleet, "The plaintiff's case depended entirely upon oral testimony as to transactions with the deceased Blythe. That testimony was of such a nature as to make direct contradiction absolutely impossible. No documents of any kind were produced to substantiate it, nor was it corroborated by any independent fact. Plaintiff's claim was never heard of until more than

a year after the appointment of an administrator of Blythe's estate, not even by parties who were jointly interested in the alleged commissions." (*Mattingly* v. *Pennie,* 105 Cal. 523, [45 Am. St. Rep. 87, 39 Pac. 203].) Mrs. Vogh was appointed administratrix of the estate of Vogh on October 31, 1911. No claim was made by Mrs. Arnold against the estate. The suit was not commenced until August 30, 1915, nearly four years after Vogh's death. Regardless of any bearing the delay might have had upon either the question of laches or that of limitations, it was a circumstance which the trial court was warranted in considering in weighing the testimony of Mrs. Arnold.

[1] Even though this court might have reached a different conclusion in regard to the existence of the agreement alleged by the plaintiff or in regard to the consideration for the conveyance, it could not substitute its judgment for that of the trial court in such a case as this. The judge who saw and heard the witnesses was best qualified to determine whether or not the presumption that Mrs. Arnold told the truth in regard to the single conversation out of the hearing of all other persons was repelled by the manner in which she testified or by the character of her testimony. (Code Civ. Proc., sec. 1847; sec. 2061, subds. 2, 3, and 6.) There was sufficient evidence to support the findings to the effect that the plaintiff had failed to prove to the satisfaction of the court that the alleged contract for support was made and that there was no consideration for the conveyance. [2] This court cannot disturb the judgment when it is supported by findings which are themselves sustained by the evidence.

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 26, 1920.

All the Justices concurred.