[No. 14967.   In Bank.—January 5, 1895.]

S. MATTINGLY, RESPONDENT, *v.* JAMES C. PENNIE, ADMINISTRATOR ETC., APPELLANT.

APPEAL—LAW OF CASE—QUESTION OF FACT—QUESTION NOT DECIDED.—A decision upon a former appeal as to a question of fact does not become the law of the case upon a second appeal, and a point presented upon a second appeal which is not the same as that decided upon a former appeal cannot be concluded by the former decision; nor will the application of the doctrine of the law of the case be extended beyond the cases in which it has hitherto been held to apply.

BROKER'S COMMISSIONS—PROCURING OF PURCHASER.—Under a contract authorizing a broker to negotiate a sale of mining stocks for three hundred thousand dollars, and to receive as his commission all that he could obtain for the stock above that price, in order to entitle the broker to recover commissions where no sale was actually consummated, it is incumbent on him to prove that he found a purchaser ready, willing, and able to buy the property on the terms fixed, and either that he procured from that person a valid contract binding him to purchase the property on those terms, or that he brought the vendor and the proposed purchaser together, so that the vendor might have secured such contract if he desired.

ID.—STATUTE OF FRAUD.—A contract for the sale of mining stocks for a sum not less than three hundred thousand dollars is within the statute

of frauds, and must be in writing, if the purchaser has not received any part of the stock, or paid any part of the price.

ID.—VERBAL OFFER TO PURCHASE—INSUFFICIENT EVIDENCE.—Evidence showing that plaintiff, within the time limited by the contract, found a person in London who offered verbally to purchase the stock for four hundred and twenty-five thousand dollars, and communicated that fact to the owner of the stock without naming or pointing out the purchaser, whereupon the owner refused to make the sale, and no contract was obtained from the supposed purchaser binding him in any way, is not sufficient to justify a verdict for the recovery of commissions by the broker.

ID.—EFFECT OF REFUSAL BY OWNER—PREVENTION OF PERFORMANCE.— The refusal of the owner to perform the contract entered into by the broker with a proposed purchaser does not amount to a prevention of performance, so as to entitle the broker to commissions without procuring a purchaser, who has made an offer to the vendor, and not merely to the broker to enter into the contract of purchase bargained for.

ID.—EVIDENCE—PECUNIARY ABILITY OF PURCHASER.—Evidence that the proposed purchaser, who did not claim that he himself had any property or means adequate for the purchase, had made the purchase on behalf of a syndicate, and expected to obtain necessary funds from that syndicate, amounts to nothing more than a statement of his belief that persons not bound to do so would have advanced the money necessary to complete the purchase, and is not sufficient to justify a finding that he had the ability to pay the purchase money.

ID.—ORAL ADMISSIONS OF PLAINTIFF—INSTRUCTIONS.—In an action by a broker against the administrator of the estate of the deceased vendor of the stock, where testimony introduced by the defendant tends to prove oral admissions by plaintiff that he had never found a purchaser for the stock, it is not a proper occasion for an instruction to the jury, at the request of the plaintiff, that evidence of the oral admissions of a party ought to be received with caution by the jury.

ID.—ADMISSIONS OF DECEASED PERSON—WEAK TESTIMONY.—No weaker kind of testimony can be produced than the unsupported testimony of a single person, as to a conversation between himself and a deceased person.

ID.—REBUTTAL OF—REPUDIATION OF CONTRACT.—Where the plaintiff claims that the decedent repudiated his contract for the sale of the stock, evidence for defendant is admissible to show that the stock was kept in the hands of a third person for delivery to any purchaser whom plaintiff might procure under the contract.

ID.—DECLARATIONS OF DECEASED PERSON—RES GESTÆ.—Although the administrator of a deceased person cannot be permitted to prove the mere declarations of the decedent, he is entitled to prove his acts under the contract sued upon and any declarations made at the time, and characterizing those acts as a part of the *res gestæ.*

ID.—APPEAL FROM JUDGMENT—DISMISSAL.—An appeal from a judgment, taken more than one year after the entry of the judgment, will be dismissed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Naphtaly, Freidenrich & Ackerman, John A. Wright,* and *William H. H. Hart,* for Appellant.

*D. William Douthitt,* and *Edward J. Pringle,* for Respondent.

VAN FLEET, J.—This is an action to recover the sum of one hundred and twenty-five thousand dollars, commissions for the sale of mining stocks. Plaintiff alleges that by a written contract with Thomas H. Blythe, defendant's intestate, he was authorized to negotiate a sale of said stocks for three hundred thousand dollars, and was to receive as his commission all that he could obtain for the stock above that price; that he procured a purchaser at the net price of four hundred and twenty-five thousand dollars, who was ready, willing, and able to pay that sum for the stock; and that Blythe refused to make the sale or convey the stock to the purchaser.

The cause was tried before a jury, and a verdict was rendered for the defendant. Plaintiff appealed to this court, and the judgment was reversed and the cause remanded for a new trial. (*Mattingly* v. *Roach,* 84 Cal. 207.) A second trial was had before a jury, which resulted in a verdict for the plaintiff for the full amount claimed. The defendant appeals, and assigns error in the instructions and other rulings of the court, and insufficiency of the evidence to justify the verdict.

Respondent contends that on the former appeal the question of the sufficiency of the evidence to sustain a verdict for plaintiff was decided in favor of plaintiff; that plaintiff's evidence was substantially the same on the last trial as on the first; and that the decision on that point has become the law of the case, and precludes us from now considering the sufficiency of that evidence.

The facts upon which this contention is based are these: On the former appeal plaintiff (then appellant) contended that a certain instruction, given at the re-

quest of defendant, was erroneous. In reply defendant (then respondent) urged that the evidence would not have supported a verdict for plaintiff even if the instruction in question had not been given, and that, therefore, the alleged error was without prejudice to plaintiff. In response to that objection we said that, in our opinion, plaintiff had produced testimony tending to sustain his side of the case, that no motion for nonsuit had been made, and that the case was properly submitted to the jury for its determination as to the facts. The instruction in question was held erroneous, and the judgment was reversed for that reason alone.

It is settled beyond controversy that a decision of this court on appeal, as to a question of fact, does not become the law of the case. But plaintiff contends that the question thus presented of the insufficiency of the evidence to support a verdict for plaintiff was a question of law, and was the very fact in judgment on that appeal. Assuming, without deciding, that that view is correct, we are, nevertheless, of opinion that the point now presented is not the same as that so supposed to have been decided on the former appeal, and that we are therefore now entitled to consider it without being concluded by the former decision. We adhere to what was said on that subject in *Wixon* v. *Devine*, 80 Cal. 388, and will not extend the application of the doctrine of the "law of the case" beyond the cases in which it has hitherto been held to apply.

On the former appeal defendant was not entitled to dispute the correctness of the rulings of the court below, or of the theory on which the case had been submitted to the jury. The verdict being in his favor, he could not assign error; and, on plaintiff's appeal, we were bound to assume the correctness of the instructions given at plaintiff's request. Those instructions, whether correct or otherwise, were binding upon the jury; and plaintiff was entitled to a verdict in accordance with those instructions, if the evidence warranted it. (*Emerson* **v.** *Santa Clara County*, 40 Cal. 543; *Aguierre* v. *Alexander*, 58

Cal. 21, 30; *Declez* v. *Save*, 71 Cal. 552.)   On that appeal, therefore, the only question which we could possibly consider as to the sufficiency of the evidence was whether the evidence was sufficient, *under the instructions actually given and not objected to by plaintiff*, to have supported a verdict in his favor had one been rendered.   On the present appeal defendant contends that the theory on which the case was given to the jury, which was substantially the same as at the first trial, was incorrect, and that the instructions were contrary to law; and that the evidence is insufficient to justify a verdict for plaintiff, under the rules of law as they should have been given to the jury. It is evident that no such question was or could have been considered or decided on the former appeal; and, if there are any expressions in the former opinion which at first glance might appear to refer to that question, they must be confined in their application to the question then actually before the court.

In addition to these considerations we are also of opinion that as to at least one material point—the alleged repudiation of the contract by Blythe—the evidence is, as we shall show, materially different from that on the former trial.

For these reasons we think that we are at liberty to consider the points made by appellant without further reference to the former opinion.

1. At the request of the plaintiff the court gave the jury the following instruction: "The authority given to the plaintiff by exhibit B to sell the stock of the Blue Jacket Mining Company for a sum not less than three hundred thousand dollars did not authorize the plaintiff to execute in the name of Thomas H. Blythe any written contract with a purchaser, or to bind Blythe to a purchaser, but only to procure a purchaser, and this might be done verbally by bargain with the purchaser."

If is evident that the question of the power of plaintiff to bind Blythe by a contract of sale of the stock does not arise in this case; and this instruction therefore means, and must have been understood by the jury

to mean, that plaintiff would fully perform the conditions of his contract with Blythe, and earn his commissions by merely obtaining from a purchaser a verbal bargain to buy the stock.

The court also, at the request of plaintiff, gave the following instruction: "If the jury believe that the plaintiff found a purchaser who was able, ready, and willing to purchase and pay for the stock of the Blue Jacket mine at five hundred thousand dollars, or any sum above three hundred thousand dollars, before the fifteenth day of February, 1883, and informed Thomas H. Blythe of the fact in season, so that a sale could have been consummated before the fifteenth day of February, 1883, and the said Blythe refused to make a sale, then the plaintiff is entitled to recover."

These instructions do not correctly state the law. In order to entitle a broker, under such a contract, to recover commissions where no sale has actually been consummated, it is incumbent on him to prove that he found a purchaser ready, willing, and able to buy the property on the terms fixed, and either that he procured from that person a valid contract binding him to purchase the property upon those terms, or that he brought the vendor and the proposed purchaser together so that the vendor might have secured such contract if he desired. On no other terms can he recover. (*Gunn* v. *Bank of California,* 99 Cal. 349.) The readiness and willingness of a person to purchase the property can be shown only by an offer on his part to purchase; and unless he has actually entered into a contract binding him to purchase, or has offered *to the vendor,* and not merely to the broker, to enter into such a contract, he cannot be considered a "purchaser." Such a contract, in this case, would be within the statute of frauds, and must be in writing (Code Civ. Proc., sec. 1973, subd. 4; Civ. Code, sec. 1739), there being no pretense that the purchaser had received any part of the stock or paid any part of the price. The court should have instructed the

jury in accordance with these principles, and the above instructions were erroneous.

2. It follows also from these principles that the evidence did not justify the verdict. The evidence produced by plaintiff at the most tended only to show that plaintiff, within the time limited, found a person in London who offered verbally to purchase the stock for four hundred and twenty-five thousand dollars net; that plaintiff communicated that fact to Blythe without in any way naming or pointing out the purchaser; and that Blythe thereupon refused to make the sale. No contract was obtained from the supposed purchaser which could bind him in any way, nor was it shown that Blythe was aware who he was or did any thing to prevent plaintiff from performing the condition of the contract. Counsel for plaintiff contend that the evidence shows that Blythe unequivocally refused to perform his contract; and they claim that, under section 1512 of the Civil Code, his refusal to perform entitled plaintiff to all the benefits which he would have obtained if the contract had been performed by both parties. Such is not the law. In some cases of bilateral contracts a refusal on the part of one party to perform the contract has been held to amount to a prevention of performance by the other party. But where, as here, the contract is unilateral, the party to whom the promise is made cannot recover without proof of performance of the condition upon which the promise depends; and in such cases a mere refusal by the promisor to perform, or even an entire repudiation by him of the contract, does not of itself amount to prevention. In no event could plaintiff become entitled to commissions without procuring a purchaser in the manner before pointed out. If he had procured such a purchaser Blythe's refusal to sell would not have strengthened plaintiff's case; as he did not procure one, and was not prevented by an act of Blythe from procuring one, the alleged refusal is immaterial.

But we do not think that the evidence tends to show

that Blythe repudiated the contract, or even refused to sell the stock as he had agreed. The only testimony on this subject is that of plaintiff's witness Ledden, who testified that he took to Blythe a letter from plaintiff stating that plaintiff had sold the stock in London for five hundred thousand dollars, and that the money was ready in London to pay for it; that Blythe thereupon became angry, and "said he would not sell it." The witness asked "if he was going to carry out the conditions of the letter, and he said 'No.' He said that the amount was too small, or something to that effect—that he had to divide up the amount that he was to get with several parties, and that he would not carry out the condition. He said that perhaps other arrangements could be made that would be satisfactory to him, or something to that effect." The witness remembered nothing further as to the contents of the letter, though he thought it contained something more. The only other testimony concerning the contents of the letter was that of the plaintiff and the witness Wand, neither of whom could state any thing further concerning them.

It is evident that that testimony, if believed, proved nothing, unless in connection with the contents of the letter referred to. If that letter contained nothing beyond the bare statement testified to by the witnesses, Blythe's language amounted to nothing, for there was nothing for him to act upon. If, on the other hand, it contained a statement of the conditions of the sale, as the witness Ledden seems to imply, then, without knowing what were the conditions so stated, it is impossible to determine whether Blythe's refusal was justified or not. It appears by the testimony of plaintiff's witness Borgen, the supposed purchaser, that the money was to be payable in London. If the letter so stated then Blythe was justified in refusing to accept the proposition, for, under his contract, he was entitled to payment in San Francisco. It should be observed that on the former trial the witness Ledden testified that Blythe

said that " if the money was in hand he would not accept it"; and we considered that such a statement would excuse the plaintiff from sending or tendering the money to him at San Francisco. But the witness did not so testify on the last trial, and there is now nothing in the testimony to show that Blythe in any way repudiated his contract, certainly nothing tending to show any act on his part which could have prevented plaintiff from procuring a purchaser.

The evidence is also insufficient to show that the supposed purchaser had the ability to purchase the stock at the price named. The only evidence on that point is his own testimony. He did not claim that he himself had any property or means adequate for that purpose; but he said that he made the purchase on behalf of a " syndicate," and expected to obtain the necessary funds from that syndicate. His testimony, taken most favorably for plaintiff, was that he had never had the money in his hands, that no persons had ever actually subscribed the money, but that, through that syndicate, he " *would have been prepared* " when the time arrived " to complete the purchase "—" to find the money required." That testimony amounted to nothing more than a statement of his belief that persons not bound by contract to do so would have advanced the money; and it is clearly not such evidence as, under section 1835 of the Code of Civil Procedure, would justify the jury in finding that he had the ability to pay. Moreover, he testified that he was unable to remember the name of a single one of the persons forming the syndicate, and that, since the commencement of this action, he had destroyed all memoranda by which he could have refreshed his memory on the subject. Under these circumstances his testimony was clearly not " satisfactory," within the meaning of section 1835, and should not have been submitted to the jury.

There are many other serious objections urged against the evidence given for plaintiff which it is not necessary to consider, as those already mentioned are

sufficient for the purposes of this appeal.  It is enough
to say that the evidence was not sufficient to support
plaintiff's case on any material issue.

3. The court, at the request of plaintiff, instructed the
jury that "evidence of the oral admissions of a party ought
to be received with caution by the jury."  This instruc-
tion was evidently predicated upon certain testimony
introduced by defendant, tending to prove oral admis-
sions by plaintiff that he had never found a purchaser
for the stock.  It is in the precise language of subdivision
4 of section 2061 of the Code of Civil Procedure, which
authorizes the court to give it "on all proper occasions."
Counsel for defendant contend that, under the decision
in *Kauffman* v. *Maier,* 94 Cal. 269, 282, it was a charge
with respect to a matter of fact, and therefore forbidden
by the constitution.  It is not necessary to consider that
question in this case, for we are of opinion that this was
not a "proper occasion," within the meaning of that sec-
tion, for the giving of such an instruction.

The plaintiff's case depended entirely upon oral testi-
mony as to transactions with the deceased Blythe.  That
testimony was of such a nature as to make direct contra-
diction absolutely impossible.  No documents of any
kind were produced to substantiate it, nor was it cor-
roborated by any independent fact.  Plaintiff's claim
was never heard of until more than a year after the ap-
pointment of an administrator on Blythe's estate, not
even by parties who were jointly interested in the alleged
commissions.  Under such circumstances the only kind
of evidence which defendant could possibly obtain was
testimony of the kind referred to in this instruction.
That testimony was of at least as high a character as
that produced by plaintiff.  Indeed, plaintiff's whole
case rested upon the unsupported testimony of a single
witness as to a conversation between Blythe and him-
self when they were alone.  No weaker kind of testi-
mony could be produced; and it was clearly not a proper
occasion for the court, under such circumstances, to give
to the jury an instruction in disparagement of the testi-

mony by which alone defendant could meet the testimony adduced by plaintiff.

4. The court erred in sustaining plaintiff's objections to the questions propounded by defendant to the witness Hart. It was competent for defendant to show that the stock was kept in the hands of a third person for delivery to any purchaser whom plaintiff might procure under the contract. That would be a circumstance tending to contradict the claim that Blythe had repudiated his contract. While it is true that defendant could not be permitted to prove the mere declarations of the deceased in his own favor, he was certainly entitled to prove his acts under the contract, and any declaration made at the time, and characterizing those acts as a part of the *res gestæ.*

Some other points are urged by appellant, some of which are sufficiently covered by what has been said, and others will not probably arise on another trial.

The appeal from the judgment, having been taken more than one year after the entry of judgment, is dismissed. The order denying a new trial is reversed and the cause remanded for a new trial.

McFarland, J., and Fitzgerald, J., concurred.

Garoutte, J., concurring.—The evidence in the record is wholly insufficient to support plaintiff's complaint. Of the many elements of the case absolutely necessary to be proven in order to establish a cause of action, hardly one is sufficiently made out. Yet plaintiff has recovered a judgment for more than one hundred thousand dollars upon this evidence, and insists that the validity of such judgment be ratified by the court. To obviate the results which would necessarily flow from this dearth of evidence, to wit: a reversal of the judgment, the principle of the law of the case is invoked, and a former decision of this court relied upon, wherein it is said that "the plaintiff produced testimony tending to prove his side of the case." (Citing the testi-

mony, *Mattingly* v. *Roach*, 84 Cal. 207.)   Conceding the
evidence to be the same upon both appeals, still I do
not think this declaration of the court should be held
equivalent to a declaration that plaintiff by the evidence
established a *prima facie* case for a recovery.   At that
time the matter under consideration was the validity of
an instruction, and the sufficiency of the evidence only
incidentally arose upon the discussion of that question.
While in a certain sense the language of the court is
not *obiter*, still it is closely allied to it.   The sufficiency
of the evidence was not the direct question with which
the court was dealing, and it is entirely apparent from
the context, that the court, in making the statement
quoted, never intended to so pass upon the sufficiency
of plaintiff's evidence, as to forever foreclose a trial court,
or this court, from declaring it insufficient to establish a
*prima facie* case.

If the court did not intend to make any law of that
kind for the case, to hold that such law was made would
be treating the doctrine here invoked most kindly and
liberally, while, upon the contrary, it has been recog-
nized always and everywhere as a harsh doctrine, and
one which has nothing to commend it to the favor of
courts.

I concur in the judgment.

Chief Justice BEATTY and Justice HARRISON being dis-
qualified took no part in the decision of the foregoing
cause.

Rehearing denied.