[Civ. No. 173.  First Appellate District.—February 27, 1907.]

## NORTHWESTERN PACKING COMPANY, Respondent, v. ARTHUR L. WHITNEY et al., Appellants.

CORPORATIONS—DISPOSITION OF PROPERTY—AUTHORITY OF DIRECTORS—POWER OF PRESIDENT.—A corporation can only act in relation to the control and disposition of its property through its board of directors, or some one authorized by the board. Its president has no power, merely by virtue of his office, to buy or sell the property of the corporation or to make an executory contract to sell its property binding upon it.

ID.—UNAUTHORIZED EXECUTORY CONTRACT OF SALE—CORPORATION NOT ESTOPPED.—The corporation is not estopped to deny the validity of

an unauthorized executory contract of its president to sell its property, to which the corporate seal is not attached, and from which it has derived no benefit and which was not authorized by any course of business between the parties nor ratified by the board of directors.

1D.—EVIDENCE—BY-LAWS OF CORPORATION.—Where a corporation is sought to be charged for breach of an agreement executed by its president which has not been performed, and there is no question of estoppel or ratification, the by-laws of the corporation are admissible in evidence to show that the president was only authorized to execute instruments in writing which have been first approved by the board of directors.

ID.—BROKER'S COMMISSION NOT ALLOWABLE—PROCURING OF PURCHASERS WHO DO NOT CONTRACT.—A broker's commission upon the unauthorized contract of sale made by the president of the corporation is not chargeable against the corporation nor is it allowable under the terms of the contract made by the president by reason of the mere finding of purchasers ready, able and willing to purchase, where there was no agreement to purchase and no sale was negotiated.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Myrick & Deering, for Appellants.

H. W. Hutton, for Respondent.

COOPER, P. J.—The complaint alleges that in October, 1902, plaintiff sold and delivered to defendants two hundred and fifty barrels of red Alaska Salt Salmon at $7.50 per barrel, less a discount of five per cent, making the total amount due $1,781.25; that the same had not been paid, except the sum of $850 on account, leaving $931.25 due and unpaid. The answer denies specifically the allegations of the complaint, and by way of counterclaim alleges that the plaintiff is indebted to the defendants in the sum of $1,593.75 for work and labor performed by defendants for plaintiff at its special instance and request, no part of which has been paid except the sum of $931.25, and concludes with a prayer for judgment against plaintiff in the sum of $662.50.

The court found that the allegations of the complaint are true, and as to the answer it found: "It is not true that within the two years prior to the filing of defendants' answer herein, or at any other time, the defendants performed work and labor or either thereof for plaintiff at the plaintiff's special instance and request or otherwise, or for which the said plaintiff promised and agreed to pay the said defendants the sum of one thousand five hundred and ninety-three dollars and seventy-five cents ($1,593.75) or any other sum of money." Upon the findings judgment was entered for plaintiff as prayed for in its complaint.

Defendants prosecute this appeal from the judgment, and urge certain rulings as prejudicial. There is no question as to the sufficiency of the evidence to support the findings, and there seems to be no serious question as to the sale of two hundred and fifty barrels of the salmon to defendants, the price agreed to be paid, and the balance due upon that transaction. The rulings complained of relate to the defendants' counterclaim. Their counterclaim is based upon what is claimed to be a contract binding upon plaintiff for the sale of all the salmon packed by the plaintiff for the season of 1902. This alleged contract is contained in a letter of which the following is a copy:

> "Arthur L. Whitney.
> "Albion H. Whitney.

"C. E. Whitney & Co.
> "Commission Merchants,
>> "904 Hayward Building.
>>> "San Francisco, Cal., April 15th, 1902.

"C. E. Whitney & Co.,
> "904 Hayward Building, City.

"Gentlemen:

"Confirming verbal understanding with you, I will give you the handling of all the salted salmon packed by the Northwestern Co. and other companies in which I may be interested this year, relying on your discretion and judgment to realize the best prices possible. You to receive a commission of 5 per cent net on the sales.

> "Yours truly,
>> "NORTHWESTERN PACKING CO.
>>> "L. A. PEDERSEN."

It is admitted that defendants did not sell the plaintiff's salmon pack for the year referred to, but that plaintiff sold its entire pack of four thousand three hundred barrels, save and except the two hundred and fifty barrels, the subject of the complaint in this action. Defendants' contention is that the letter signed by Pedersen is a contract binding upon plaintiff corporation, and that they should have been permitted to prove that they had or procured purchasers ready, able and willing to purchase the entire pack of salmon, and thus earned the commission of five per cent as provided in said letter. The main contention is as to whether or not the letter constitutes a binding executory contract upon plaintiff corporation. Aside from the question as to the letter being unilateral and no valid consideration on the part of the defendants, we are of the opinion that the letter does not of itself constitute a valid contract binding upon the plaintiff corporation. It is written by the president of the corporation, and in it he says: "I will give you the handling of all salted salmon packed by the Northwestern Co. and other companies in which I may be interested this year." It is not attested by the seal of the corporation. There does not appear to have been any resolution of the board of directors authorizing the contract.

The salmon pack of 1902 was the property of the plaintiff, an artificial being created under the provisions of the statute. The title was in the corporation and not in Pedersen. The corporation could only act—could only speak—through the medium prescribed by law—the board of directors. The statute under which the corporation was created contains the express mandate: "The corporate powers, business and property of all corporations formed under this title must be exercised, conducted and controlled by a board of not less than three directors." (Civ. Code, sec. 305.)

The rule has been adhered to by the courts. (*Gashwiler* v. *Willis*, 33 Cal. 11, [91 Am. Dec. 607]; *Alta Silver Min. 'Co.* v. *Mining Co.*, 78 Cal. 629, [21 Pac. 373]; *Fontana* v. *Pacific Can. Co.*, 129 Cal. 51, [61 Pac. 580].) The president of a corporation has no authority by virtue of his office to buy or sell the property of the corporation, or to make an executory contract binding upon the corporation. (*Bliss* v. *Kaweah C. & I. Co.*, 65 Cal. 502, [4 Pac. 507].) The doctrine of estoppel does not apply, because the corporation has not availed

itself of any benefit in any way or manner by reason of the
alleged contract.  (*Id.*)  Nor was the contract authorized by
the course of business between the plaintiff and defendants,
for the reason that it does not appear that they had ever
had any business dealings with each other prior to the time
the letter was written by Pedersen; nor was there ever a
ratification of the alleged contract by the board of directors.
If the defendants had in fact sold the salmon referred to
in the letter, and the plaintiff had availed itself of the ser-
vices of the defendants in making such sale, and had de-
livered the salmon to the purchaser or purchasers procured
by defendants, then an entirely different question would be
presented.  In such case the plaintiff would not be allowed
to reap the benefits of the contract and at the same time es-
cape the burdens.  In the case at bar it is sought to charge
the plaintiff under a contract which it never made, and from
which it has never received any benefit, and to compel it to
pay defendants a commission for a sale they did not make and
which they never agreed to make.

The court, under defendants' objection, allowed the plain-
tiff to read in evidence article VII of plaintiff's by-laws,
which provides that the president shall sign as president "all
certificates of stock and all contracts and other instruments
in writing, which have been first approved by the board of
directors."  The defendants now urge that the ruling was
erroneous, because they were strangers to and had no notice
of the by-laws introduced in evidence.  The record does not
disclose that any such ground was stated in the objection.
The objection was "to their introducing in evidence their
own by-laws as a part of their own case as against us."
However, the ruling was not erroneous under the circum-
stances of this case.  As has before been stated, there is noth-
ing to show that the plaintiff has been guilty of such conduct
as to estop it from denying the validity of the contract signed
by Pedersen.  Where a corporation is sought to be charged
for a breach of an agreement which has not been performed,
and there is no question as to estoppel or ratification, the
by-laws of the corporation are admissible in evidence for the
purpose of showing that the contract was not executed as the
by-laws provide.

It is claimed that the court erred in sustaining plaintiff's
objections to certain questions asked of the defendant Arthur

L. Whitney for the purpose of showing that he had procured purchasers for the salmon who were ready, able and willing to purchase. If we are correct in our conclusion that the contract made by Pedersen was not the contract of plaintiff, then the evidence was properly excluded. The questions were each objected to as calling for the opinion of the witness, and the objections might well have been sustained on that ground. Each of the questions contained the interrogation as to whether the witness ''had purchasers ready, willing and able to buy the salmon.'' Whether a purchaser was ready to purchase, able to purchase, and willing to purchase, would depend upon facts. If the party making an offer was able to purchase, and the price was agreed upon, the plaintiff must have been informed of the facts. Plaintiff could not have disproved the statement of the witness by independent evidence if he only said that he had a purchaser ready, willing and able to purchase. And furthermore the defendants would not have earned their commission by simply finding a purchaser who was ready, able and willing to purchase. A person might be ready, able and willing to purchase, and yet make no agreement to purchase. The broker is not entitled to a commission until he negotiates a sale by bringing the buyer and seller together. The broker does not earn his commission until he procures a valid contract to purchase, or brings the buyer and seller to an agreement. (*Gunn* v. *Bank of California,* 99 Cal. 349, [33 Pac. 1105].) It appears from the testimony of Arthur L. Whitney that defendant did not negotiate a sale. He testified: ''I had a conversation with Mr. Webster during this time; he said that they needed the money; he was quite anxious to sell, that they had been offered $6.75 for the salmon, and I told him that was too low; and he said that they needed the money, and I said I would advance them five dollars a barrel on it. I said, 'That is too low, and I want to get something like what the goods are worth,' and I said I would guarantee to get him at least $7 net for the salmon. I remember that I said to Mr. Webster, if they insisted upon selling at those prices, that I would sell and could sell to better advantage to the party who eventually bought the salmon than they could, and let me do it, and he said he would. The first that I knew that the pack had been sold by the plaintiff company was shortly after that I heard it rumored that it had been,

and I called up Webster and he said yes, that it had been sold. It was not done with my knowledge or consent.'' He further testified as to a conversation with Webster, plaintiff's bookkeeper, as to the sale of the two hundred and fifty barrels, the subject of this case. His language is: ''Mr. Webster told me one day that they were offered $6.75, and seemed to think we ought to sell; and I told him that that was too cheap, that we could get more money, and finally he said, 'Well, I cannot afford to take any chances,' and I said, 'Well, I will guarantee you $7 net for your salmon, but you hold on and do as you agreed with me, and I will get you more.' Well, he said they would, and shortly after that I heard, directly or indirectly, I don't know which, that they had sold their fish to a party who had been trying to buy it from me, and I called him up on the 'phone, and asked him if that was true, and he said yes, and I said, 'I have got some orders left with me that I must fill, and I want you to deliver them,' and they delivered this 250 barrels in that way, and they were sold in that way at $7.50, less 5 per cent commission.'' It thus appears that the two hundred and fifty barrels were sold to defendants to fill the orders they had, and they were given credit for the five per cent commission.

The judgment is affirmed.

Hall, J., and Kerrigan, J., concurred.