[Civ. No. 3903. First Appellate District, Division Two.—November 4, 1921.]

A. P. DEOVLETIAN et al., Respondents, v. W. J. WHIT-NEY et al., Appellants.

[1] BROKERS' COMMISSIONS—CONTRACT BETWEEN AGENTS—FAILURE TO EFFECT SALE—EVIDENCE.—In this action by plaintiffs, who were working for defendants under a contract to sell real estate on commission, the evidence fails to show that the plaintiffs effected the sale within the meaning of the terms of the contract.

[2] ID.—FINDING OF PURCHASER.—A real estate broker need only produce a purchaser able, ready, and willing to purchase upon the terms exacted by the owner, and even though the transaction be eventually consummated by the owner, the agent is entitled to his commission, in the absence of any contrary contract provisions.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Reversed.

The facts are stated in the opinion of the court.

Lewis H. Smith and Frank H. Marvin for Appellants.

Ohannesian & Ohannesian for Respondents.

LANGDON, P. J.—This is an appeal by the defendants from a judgment for two thousand dollars against them, in an action to recover commissions upon the sale of real

---

2. When broker has earned commissions, notes, 28 Am. St. Rep. 546; 139 Am. St. Rep. 225; Ann. Cas. 1914D, 395; 21 L. R. A. (N. S.) 328.

estate. Defendants were in the real estate business and plaintiffs were working for them under a contract which, in so far as it is relevant here, reads as follows:

"Pursuant to our conversation of even date, beg to advise that during the period that you continue to carry on the general real estate business in the connection with us, as our representative, we will pay the following commission: (1) On property listed through this office and sold by yourself, we will pay you 50 per cent of the gross commission derived from the sale. (4) On property listed by this office and sold by this office without any effort on your part you will receive no commission. (5) We agree to give you as much assistance as possible in closing deals that may be effected by you, and any assistance which we may render you in this manner will not affect the scale of commission. We will also expect you to render such assistance to this company as you conveniently can in the matter of listing any property from clients who shall come into this office for the purpose of listing property. It being understood, however, that such listing shall be considered as having been listed by this company. It is also understood that any property which you may list outside of this office where this company shall have been instrumental in aiding you to secure said listing, said property shall be considered as having been listed by this company.

"(6) Customers coming into this office for the purpose of purchasing property, or, in fact, any customer which you may secure through this office, shall be considered as belonging to this office, and on sales made by you to them we will pay you 50 per cent of the gross commission received regardless of whom the property shall have been listed by.

"(9) In the event that you fail to close any individual deal and give the deal up as lost that one of the firm, or in fact any one representing this firm pick up the deal then, and finally close same you are entitled to no commission whatever unless it be your exclusive listing which then you will be entitled to 15 per cent only."

From the record it appears without contradiction that the defendants had listed in their office, independently of any efforts of plaintiffs, a certain eighty-acre tract of vineyard belonging to J. J. Bolitho. Late in the afternoon of

February 24, 1920, Kaloust Nazarian and his son entered defendants' office and asked about land listed there for sale. One of the salesmen in the office, Sam Matthews, took out some listing cards and attempted to interest Nazarian in the property there offered. Nazarian found none of these attractive. Matthews then introduced Nazarian to one of the plaintiffs, B. P. Deovletian, who brought forward another box of listing cards, on one of which the Bolitho property was listed. Nazarian said he knew something of this property through some other source, but had never seen it and desired to do so; that he did not have time to go out to see the property that day, as it was already late in the day, but stated that he would come in at another time and go out to see the property. In accordance with this understanding, he arrived at the office of the defendants on Saturday afternoon, February 28, 1920. There he met the plaintiff, B. P. Deovletian, and asked to be taken to see the Bolitho property. Said plaintiff, however, stated that he had an engagement to take another customer out and could not go with Mr. Nazarian. Because of this fact, he introduced Nazarian to the defendant Whitney, explaining that he, Deovletian, could not take Nazarian out to see the property. Thereupon Mr. Whitney said he would take him out, which he did. Whitney introduced Nazarian to the owner of the property and, after a personal examination and some negotiations, Nazarian deposited one thousand dollars upon the contract price of the property and signed a preliminary agreement for the purchase of the same. As to the details involved in the execution of the final contract, it appears that most of the complications which arose as to the acceptance of certain securities as part of the first installment payment for the property and disposing of certain property owned by Nazarian to enable him to meet the first payment of thirty-five thousand dollars were met and solved by Mr. Whitney. Mr. Bolitho, the owner of the land, stated that he had never known the plaintiffs in connection with the transaction; that Mr. Whitney had conducted all the negotiations and closed the transaction, except for the part which his attorneys had taken in the matter. According to the testimony of B. P. Deovletian, his connection with the transaction was as herein stated, and he does not claim to have had any further part in it

except to say that he went to the abstract office and took abstracts back and forth from there to the attorney's office, and asked Mr. Whitney at different times how the matter was getting along. His brother, A. P. Deovletian, stated that he had been away from the city until after the preliminary agreement was signed, and that his part in the transaction was "that I have handled the contracts from Mr. Cook's office for investigation down to our office then to Mr. Willey's office and then the abstract was lost at one time, misplaced rather, and we went around and found the abstract and brought it to your [the attorney's] office, and such details like that. . . . "

Upon this evidence, the trial court gave judgment for the plaintiffs, who were working as partners in their real estate transactions.

[1] We are of the opinion that, under their contracts, the plaintiffs have not earned the commission they seek to recover. In many of the cases cited by the respondent, the rule with reference to commissions to be paid by an owner to a real estate dealer is discussed. [2] In such cases, of course, the rule is well settled that the agent need only produce a purchaser able, ready, and willing to purchase upon the terms exacted by the owner, and that, even though the transaction be eventually consummated by the owner, the agent is entitled to his commission, in the absence of any contrary contract provisions. In the present case, however, the situation is different. The plaintiffs and defendants are all real estate agents, and the plaintiffs were working under express contracts requiring them to do certain things. They were required to sell the property— to effect a deal, in order to receive one-half of the commission. It is true that the contract provides that the defendants shall give to plaintiffs as much assistance as possible in closing deals after they have been effected by the plaintiffs. But we think that in order to "effect a deal" the plaintiffs must have secured a binding preliminary contract, or at least brought the buyer and seller together, so that they might themselves negotiate and execute a valid preliminary agreement. We are not disposed to construe the above-quoted provision of the contract requiring the defendants to render assistance to the plaintiffs in closing deals after they had been effected by the plain-

tiffs, in such an unreasonable manner as to require the defendants to do everything in connection with the transaction except to find in their own files a listing card in which the customer might possibly be interested, and to carry abstracts from one office to another after the preliminary agreement had been signed and a deposit made upon the purchase price of the property. The contract clearly states that the plaintiff was to have no commission upon property sold by the defendants and that customers coming into the office were to be considered as customers belonging to the office of defendants. The contract also provides that in the event plaintiffs give up any "individual deal" and it is taken up by any member of the firm and finally closed, plaintiffs are to be entitled to no commission unless there was involved property which had been listed exclusively with the plaintiffs.

We think it clearly appears from all the testimony in the record—indeed, it is apparent from the testimony of plaintiffs themselves—that they did not effect any sale; that they never brought the buyer and seller together, or caused a meeting of their minds upon this transaction, and that they are not entitled to any commission under the terms of their contract. (*Wright & Kimbrough* v. *Dewees* (Cal. App.), 197 Pac. 957; *Naylor* v. *Ashton,* 20 Cal. App. 544, 546 [130 Pac. 181]; *Northwestern Packing Co.* v. *Whitney,* 5 Cal. App. 105, 110 [89 Pac. 981]; *Ayres* v. *Thomas,* 116 Cal. 143 [47 Pac. 1013]; *Mattingly* v. *Pennie,* 105 Cal. 514, 519 [45 Am. St. Rep. 87, 39 Pac. 200]; *Gunn* v. *Bank of California,* 99 Cal. 349, 353 [33 Pac. 1105].)

The judgment is reversed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 3, 1922.

All the Justices concurred, except Lawlor, J., and Shurtleff, J., who were absent.