[Civ. No. 3472.   Third Appellate District.—November 27, 1928.]

H. R. RAMSDELL, Respondent, v. C. F. KREHMKE, Appellant.

J. Oscar Goldstein for Appellant.

A. H. Hewitt and Lloyd E. Hewitt for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment for $700 broker's commissions for procuring a customer, ready, willing, and able to purchase real property situated in Butte County, upon the terms specified. April 5, 1926, the appellant signed an exclusive ten-day contract to pay respondent five per cent commissions for the sale of lots 18 and 19 of Gridley Tract Number 5, situated in Butte County, for the sum of $14,000, upon the following terms: "$6000.00 down and the balance secured by mortgage and contract for five years to pay $1600.00 a year, with interest at 6 per cent per annum until paid. . . . Evidence of title to be in the form of certificate of title issued by a responsible Title Company to be furnished and paid for by the seller." The following day the respondent took Mrs. Ollie Osborne, a prospective purchaser who resided at Live Oak, to inspect the property, where she met the appellant on his ranch near Gridley. She was entirely satisfied with the property, and agreed to purchase it upon the terms specified, paying the respondent $500 to bind the bargain. April 13, 1926, the respondent, who also lived in Live Oak, within a few miles of Gridley, wrote the appellant at Gridley informing him that he had procured a customer in the person of Mrs. Ollie Osborne, who was ready, willing, and able to purchase the property upon the exact terms specified in their listing contract of April 5th, and enumerated these terms in the letter, requesting the appellant to at once procure his certificate of title so as to enable them to close the sale within the time mentioned. At the bottom of this letter the proposed purchaser signed the following postscript:

"I have agreed with Mr. H. R. Ramsdell to purchase the property above mentioned for the sum of $14,000.00, upon the terms contained in the written authorization dated April 5, 1926, and given to said H. R. Ramsdell by C. F. Krehmke, and I have funds on hand to make the initial payment of $6000.00, and I have deposited with said H. R. Ramsdell the sum of $500.00 to be applied on the purchase price of said property, and as evidence of good faith on my part. Dated, April 13, 1926. (Signed) Ollie Osborne." The owner, however, evidently sought to avoid the contract, and the sale was not consummated.

Upon the assumption that the evidence supported the findings that the respondent had procured a customer within the allotted time who was ready, willing, and able to purchase the property upon the terms specified, the court rendered judgment in his favor for the sum of $700. The appellant contends that the findings and judgment are not supported by the evidence, for the reason that (1) The proof fails to show that the customer was able to purchase the property upon the terms specified; (2) A written contract of purchase was neither procured from the customer, nor were the parties brought together so as to enable the owner to consummate the sale; and (3) The contract for broker's commissions was procured by fraud. ■ The well-established rule requiring the payment of broker's commissions is not disputed, to the effect that a broker is deemed to be the procuring cause of sale so as to entitle him to his commissions, when he has secured a customer, ready, willing, and able to purchase the property upon the terms prescribed in the contract of employment, and has either obtained from the customer an enforceable written contract to buy the property on the terms designated, or in lieu thereof, has succeeded in bringing the parties together so as to enable the owner to consummate the sale. (4 Cal. Jur. 582, sec. 25.) Where the sale is not consummated, proof is required showing the actual signing of an enforceable contract to purchase the property on the part of the customer, or that the parties have been brought together to enable the owner to consummate the sale. (*Mattingly* v. *Pennie*, 105 Cal. 514 [45 Am. St. Rep. 87, 39 Pac. 200]; *Gunn* v. *Bank of California*, 99 Cal. 349, 353 [33 Pac. 1105]; *Deovletian* v. *Whitney*, 55 Cal. App. 76 [202 Pac. 905]; *Douglas* v. *Spangen-*

*berg*, 23 Cal. App. 294 [137 Pac. 1103] ; *Cone* v. *Keil*, 18 Cal. App. 675 [124 Pac. 548].)

The customer's ability to purchase does not necessarily mean that he must have the actual cash on hand with which to consummate the transaction. It merely means that he must have the property, credit, or ability to provide for the necessary consideration upon the terms and within the time required. (*Pellaton* v. *Brunski*, 69 Cal. App. 301 [131 Pac. 583] ; *Russell* v. *Ramm*, 200 Cal. 348 [231 Pac. 583].)

The evidence in the present case sufficiently supports the finding that the customer was ready, willing, and able to purchase the property upon the terms prescribed. The contract called for "$6000.00 down, and the balance to be secured by mortgage" on the premises. Mrs. Osborne testified as follows: "Q. Did you have any funds to meet the payments specified in the contract? A. I did. . . . I deposited them in the (Lodi National) Bank on the 7th of April, 1926. Q. How much did you deposit? A. Five thousand dollars. . . . It was my own money; I had sold property and obtained it. . . . I also had money in account with the Bank of Italy, . . . enough to make up the $6000, lacking $500. . . . The Bank of Italy said they would let me have it (the $500) so I had the $6000. . . . I could put my hand on it any time I wanted it." Corroborating this evidence, Mr. Cobeen, the manager of the Bank of Italy at Live Oak, testified: "Q. Do you know Mrs. Ollie Osborne. A. I do. Q. In April, 1926, did she make arrangements with your bank to obtain funds for the purchase of land, the Krehmke place? A. She did. . . . She asked for approximately $500, and we told her that we would loan her (that amount) on an open note." The contract provided that the vendor would furnish a certificate of title at his own expense. A reasonable construction of this provision for the payment of "$6000 down" is that this cash was to be proffered upon the tendering of evidence of a merchantable title. The certificate of title was never procured or tendered by the appellant. The record also adequately shows that the vendor and prospective purchaser were brought together by the respondent so as to afford the appellant an opportunity to consummate the sale, and that a sufficient written contract of purchase was signed by the customer. The appellant knew the identity of respondent's customer

before the contract of employment of the broker was signed. The appellant testified: "Q. He (respondent) had notified you he had a purchaser . . . before you met on that date; that he had a purchaser in the person of Mrs. Osborne, didn't he? A. Yes, sir." Mrs. Osborne was actually introduced to the appellant as a prospective purchaser the day following the execution of the broker's contract. She testified: "Q. Have you met the defendant, Mr. Krehmke? A. Yes, sir. Q. Where did you meet him? A. At his place at home. Q. At his ranch near Gridley? A. Yes, sir. Q. When did you see him first? A. It was the 6th of April. . . . Q. What was the occasion of your calling at that place? A. I came to look at the place. Q. Had you been apprised of the price? A. Yes, I knew the price." April 13th respondent wrote a letter to the appellant notifying him that he had procured a purchaser in the person of Mrs. Osborne, who was able and willing to buy the property on the exact terms of the contract, enumerating these terms specifically. As a postscript to this letter, Mrs. Osborne signed a written acceptance, in which she agreed to purchase the property "upon the terms contained in the written authorization dated April 5th, 1926." This communication, referring to and construed with the original contract of April 5, 1926, constituted a sufficient written agreement on the part of the customer to bind the appellant to pay the agreed broker's commissions. It is not the purpose of the law to adhere to a rule of evidence in proof of the ability and readiness of a customer to purchase the property so stringent as to encourage an owner to breach his contract without just cause. In the case of *Pellaton* v. *Brunski*, 69 Cal. App. 306 [231 Pac. 585], it is said: "The burden is upon the broker to prove his case, but in assuming this burden, no higher degree of evidence is required of him than in any other case, and the same principles apply to the weight and character of evidence." ■ While, in the absence of an actual consummation of sale, it is necessary to prove that either a written agreement to purchase has been signed by the customer, or that the parties have been brought together by the broker so as to enable the owner to close the sale, all that is required is such satisfactory evidence of these acts as would suffice to prove any other material fact. ■ The statement made by Mrs. Osborne that: "I *have*

agreed . . . to purchase the property . . . , " considered in view of the written contract, communications and circumstances involved in this transaction, should be construed to mean, "I *do* agree . . . to purchase the property . . . upon the terms contained in the written authorization dated April 5th, 1926." There is no uncertainty of this language employed. It is apparent that Mrs. Osborne intended to thereby notify the appellant she was consenting to buy the property upon the terms mentioned in respondent's contract for broker's commissions, and that she had the means with which to do so, and had deposited the sum of $500 with the broker to bind the bargain. We are of the opinion that this communication is a sufficient compliance with the rule requiring a written agreement of purchase to be signed by the customer.

■ The appellant complains of the rulings of the court sustaining objections to his cross-examination of Mrs. Osborne, most important among which was the following question: "Did you ever see Mr. Krehmke and offer to buy his property on the basis of the authorization?" This was a proper question tending to indicate a presence or absence of willingness on her part to purchase the property. It cannot be said to be prejudicial error, however, for the reason that it was not necessary that she should have personally interviewed the appellant and offered to buy the property. She could have just as conclusively bound herself to purchase the property dealing only with appellant's agent, the broker. If the purpose of this question was to refute the evidence that she had been taken into the presence of the appellant, the question was misleading because it included the unnecessary element to the effect that she had then offered to buy the property. The requirement of the law is that the parties shall have been brought together, only, so that the owner may have the opportunity of closing the bargain. ■ Other questions along this line were complex and misleading, and while answers to them might well have been permitted, we are of the opinion that reversible error was not committed in sustaining objections to these questions. ■ Likewise, an objection was sustained to a question propounded to the appellant, as follows: "Did Mr. Ramsdell ever bring Mrs. Osborne to your place after April 5th, 1926, for the purpose of consummating any deal to buy that place?" It is ap-

parent that it was not necessary for the broker to consummate the deal at the appellant's premises. His purpose in taking the customer to view the premises might properly be to merely interest her in the purchase of the property with a view to consummating the sale elsewhere and later. The answer to this question might properly have been permitted. The sustaining of this objection, however, was not prejudicial. The record discloses no error upon which to base a charge that the contract was procured by fraud. The appellant makes no serious effort to indicate that he relies upon this charge.

The judgment is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.