C. O. FRICK CO., APPELLEE, *v.* BAETZEL ET AL., APPELLANTS.

(No. 18770—Decided September 21, 1942.)

*Messrs. McDonald & Hood,* for appellee.
*Mr. Neil W. McGill,* for appellants.

MORGAN, J. This is an appeal by the defendants from a judgment for $475 and costs recovered against them by plaintiff in the Municipal Court of the city of Lakewood, Ohio.

The plaintiff alleged in its petition that it is a duly qualified real estate broker and that the defendants orally listed for sale with the plaintiff their house and

lot located on Lakewood Heights boulevard, Lakewood, Ohio, at the price of $9,500; that the plaintiff secured a purchaser ready, able and willing to purchase the property at the price and on the terms named by the defendants; and that although they refused to go through with the sale the plaintiff thereby is entitled to the customary five per cent commission on $9,500.

The defendants, in their answer, admit that they listed their home for sale with the plaintiff, but alleged that the price was $11,000 gross, or $10,500 net to them. They also deny that the plaintiff produced a purchaser ready, able and willing to purchase the property.

Two of plaintiff's agents testified at the trial that the listing price was $9,500. The defendant Baetzel testified that the only price mentioned by him was as stated in defendants' answer.

The plaintiff's two witnesses further testified that the first figure mentioned by defendant Baetzel was $10,000, and that no higher figure was ever mentioned by him. Baetzel testified that he never mentioned a price less than $10,500 net for the property.

Ordinarily the holding of the trial judge on this important question of fact, in view of this square conflict in the evidence, would be conclusive. However, there is an important admission by plaintiff in its reply to defendants' answer which, to say the least, casts considerable doubt on plaintiff's evidence as to the listing price.

Defendants in their answer alleged that their offer was to sell their property, as already stated, for "$11,000 gross, with a net price of $10,500." This is wholly consistent with the evidence of defendants at the trial. On the other hand, plaintiff, in its reply admitted "that when first interviewed, the defendants wanted $11,000 for said premises." This is directly contrary to the evidence of plaintiff's two witnesses at the trial. Plaintiff and the defendants at the trial

were in agreement that two amounts were mentioned by the owners which were $500 apart. The plaintiff made no attempt to reconcile the express admission in its reply with the evidence of its witnesses at the trial.

However, we do not find it necessary to decide the question of the weight of the evidence on the issue of the price at which the defendants listed their property with the plaintiff, inasmuch as we have come to the clear conclusion that the plaintiff has failed to sustain the burden of proving the allegations in its pleading, that it found a purchaser "ready, willing and able" to buy defendants' property.

Both plaintiff and defendants are in agreement that the defendants were to receive cash for their property and that an agent of the plaintiff tendered to the defendant Baetzel a written offer signed by Frederick W. Unger for the purchase of their property at $9,500. The offer was accompanied by a check for $100, and as to the payment of the balance the signed offer stated:

"I will make application immediately at The Cleveland Trust Company for a first mortgage loan in the sum of Five Thousand ($5,000) Dollars, and I will pay the balance of Forty-Four Hundred ($4,400) Dollars in cash."

Mr. Unger was a straight-forward witness, and at the trial testified that "it was my intention that if this agreement was accepted, I would make an attempt to borrow money in addition to the cash which I had."

He testified that he had available at the time $1,000 in cash and that he hoped to get the balance from relatives "on a straight loan." He made no claim that he had arranged for such a loan.

As to Mr. Unger's ability to borrow $5,000 on the security of a mortgage on the property, he testified on direct examination:

"Q. Well, did you know at that time Mr. Unger, at the time you signed this contract, that you would be

able to borrow the money to go through? A. No, I had not made arrangements to borrow money. * * *

"Q. Mr. Unger, if that contract had been accepted, would you have been able to have carried it out according to its terms and have paid the $9,500 upon delivery of the deed to the property in the usual course? A. Well, I really don't know."

Mr. Unger was then asked whether it was his opinion that he could have financed the purchase if his offer for the defendants' property had been accepted. This question was objected to by defendants' counsel, and the court having overruled the objection, it was answered, "Yes, in my opinon, I could have."

It is our view that the objection to this question should have been sustained, and that the "opinion" of the proposed purchaser has no probative value in this case.

About 60 days after these negotiations with the defendants, Mr. Unger purchased a house and lot on Lakewood Heights boulevard, located about five houses from the Baetzel property, at a price of $9,700, of which $4,500 was obtained by a note and mortgage and the balance was cash furnished by the purchaser.

There is no evidence in the record as to the construction, state of repair and age of defendants' property, as compared with the property later purchased by Mr. Unger. A number of things might have happened in 60 days to affect the purchaser's credit. Furthermore, in financing a purchase involving $9,700, Mr. Unger secured a mortgage loan of $4,500 on the property. This is hardly evidence that he would have been able to complete his offer to the defendants by securing a mortgage of $5,000 on defendants' property valued at $9,500 as in his offer he proposed to do.

There are cases which hold that a proposed purchaser can be shown to be "ready, willing and able" to buy only by proof that "he, at the time he was pre-

sented as a purchaser of the property, had then under his control for immediate payment the amount of the purchase money in cash." *Chitwood* v. *White,* 18 Ala. App., 331, 92 S., 84; *Reynor* v. *Mackrill,* 181 Iowa, 210, 164 N. W., 335.

Other cases hold, and we think correctly, that all that need be shown to meet the required degree of proof is that "he need not have all the money in his immediate possession or to his credit at a bank, if he is able to command the necessary funds to close the deal within the time required." *Laack* v. *Dimmick,* 95 Cal. App., 456, 273 P., 50. Although the proposed purchaser may not have in hand all the necessary cash, "the ability to command the necessary funds to close the deal" must be shown to exist at the time the offer is made. *Ramsdell* v. *Krehmke,* 95 Cal. App., 195, 272 P., 333; *McCabe* v. *Jones,* 141 Wis., 540, 124 N. W., 486; *Hays* v. *Goodman-Leonard Realty Co.,* 146 Miss., 766, 111 S., 869.

On the other hand, the cases uniformly hold that "a proposed purchaser cannot be said to be able to purchase when he is dependent upon third parties who are in no way bound to furnish the funds to make such purchase." *Pellaton* v. *Brunski,* 69 Cal. App., 301, 231 P., 583. See, also, *McCune* v. *Badger,* 126 Wis., 186, 105 N. W., 667; *O'Brien* v. *Gilliland & Armstrong, Exrs.,* 4 Tex. Civ. App., 40, 23 S. W., 244; *Massie* v. *Firmstone,* 134 Va., 450, 114 S. E., 652; and note to 1 A. L. R., 528.

We hold, therefore, that the plaintiff has failed in this case to maintain the burden of proof of showing that its proposed purchaser at the time of making his offer to the defendants, was "ready, willing and able" to pay for defendants' property at the price and on the terms offered.

The plaintiff further maintains that by reason of the failure of defendants to object to plaintiff's offer when

it was presented to them, on the ground that the proposed purchaser was not "ready, willing and able" to buy, defendants have waived this defense, and that accordingly the plaintiff should succeed in this action without furnishing any proof of the financial readiness and ability of the purchaser when his offer to defendants was made.

Plaintiff's agent who presented Mr. Unger's offer to the defendants, testified that he called at defendants' home about a week after the listing of the property for sale and he then presented the Unger offer to Mr. Baetzel. He testified that Mr. Baetzel said "it is so quick; I don't know what to do or where to go" but that nothing was said about the price being unsatisfactory. Later Baetzel told plaintiff's agent that he would not accept the offer and gave no further reason for his refusal.

Mr. Baetzel testified that plaintiff's agent came to his home in the latter part of August and said, "I have here a signed agreement or contract supported with check for the sale of your house at $9,500; $4,500 cash and the balance in a mortgage." Mr. Baetzel testified that he replied, "Well, it seems to me you operate just a little fast, Mr. Marshall. We never agreed to a price of $9,500. * * * Your offer of $9,500 is not accepted. * * *"

It is clear that at no time did Mr. Baetzel base his refusal to accept Mr. Unger's offer on the ground that the buyer was not "ready, willing and able" to purchase the property. Did the defendants thereby waive the defense that the proposed purchaser was not "ready, willing and able" to buy and thereby make it unnecessary for the plaintiff to offer any proof of purchaser's willingness and financial ability?

In answering this inquiry we are first met with a question of pleading. The plaintiff in his petition did not allege any waiver, but on the contrary he alleged

that the proposed purchaser was "ready, willing and able" to buy—an allegation that was specifically denied in the defendants' answer. If any attention is to be paid to matters of pleading, it is very questionable whether on the state of the pleadings the plaintiff, on any theory of waiver, should be relieved of the burden of proving the specific allegations in its petition as to the purchaser's readiness and ability to purchase.

However, we prefer not to rest the case on any questions of pleading. If the defendants in this case had accepted Unger's offer and entered into a written contract with him they thereby would have waived any right to claim afterwards that the purchaser was not ready, willing and able to purchase the property. *Carey, Admr.,* v. *Conn,* 107 Ohio St., 113, 140 N. E., 643. Where no contract of sale was ever executed, as was true in this case, it is our opinion that while a few cases can be found to the contrary, the best considered cases and the weight of authority sustain the position that the defendants in this case have waived no defense and the plaintiff is not relieved of the burden of proving the readiness and financial ability of its proposed purchaser at the time of his offer. *Colburn* v. *Seymour,* 32 Colo., 430, 76 P., 1058; *Iselin* v. *Griffith,* 62 Iowa, 668, 18 N. W., 302; *McGavock* v. *Woodlief,* 61 U. S. (20 How.), 221, 15 L. Ed., 884; *Hayden* v. *Grillo,* 26 Mo. App., 289; *Coleman's Exr.* v. *Meade,* 76 Ky. (13 Bush.), 358; *Zeidler* v. *Walker,* 41 Mo. App., 118; *Wright* v. *Beach,* 82 Mich., 469, 46 N. W., 673; *Burnett* v. *Edling & Edling,* 19 Tex. Civ. App., 711, 48 S. W., 775.

In *Colburn* v. *Seymour, supra,* the court held in the third paragraph of the syllabus, as follows:

"In an action by an agent against his principal for commission under a contract to sell property, an in-

struction that if defendant refused to consummate the sale upon grounds other than that the purchaser was unable to pay, that then the law will presume that the proposed purchaser was able to pay the purchase price, was erroneous.''

The court said, in its opinion:

''The refusal of the defendant to consummate the sale has not damaged the plaintiff unless he can show that, if the defendant had carried out his contract, the sale would have been made. How can he show this except by proving that, at the time the contract was repudiated, as claimed, he was in a position to have effected a sale in conformity with the conditions under which the property was placed in his hands? Certainly, he has not been prevented from earning his commissions by the mere fact that the defendant refused to sell the property unless he proves that, but for the conduct of the defendant, the sale would have been consummated. The refusal of the owner to sell according to contract does not prove, neither does it raise a presumption, that the alleged purchaser was able to purchase, but renders the owner liable to the broker for commissions, the same as though the sale had actually been effected, provided the latter establishes that the proposed purchaser was ready, able and willing to make the purchase upon the terms stipulated by the owner to the broker. * * *

''While it is true there seems to be some conflict of authority on the question of whether or not it is necessary for the broker to prove the financial ability of the purchaser in those cases where the owner refuses to carry out the contract of sale, we are of opinion that the great weight of authority and the well-considered cases on the subject, require that he make such proof, because he must show, before he is entitled to recover his commissions, that he performed those

acts which, according to the contract of his employ-
ment, it was necessary for him to perform in order to
become entitled to the compensation agreed upon.''

We are in accord with the reasoning and the deci-
sion of the Colorado Supreme Court in the above case.
While the decision in the case of *List & Son Co.* v.
*Chase,* 80 Ohio St., 42, 88 N. E., 120, dealt with a sale
of personal property, on principle it applies directly
to the present case. Paragraph three of syllabus
reads as follows:

''When a purchaser of goods has absolutely reject-
ed the goods for any assigned reason, his silence as to
other objections which would justify his refusal to
accept, when unaccompanied by conduct which may
have misled and prejudiced the vendor, cannot be con-
strued as a waiver of the purchaser's right to insist
on his plea of non-performance on those grounds.''

The plaintiff having failed to maintain the burden
imposed upon it by law of showing that the buyer pro-
duced by him met the legal standard of a buyer ''ready,
willing and able'' to buy, and there being no proof of
any waiver of this defense by defendants, the judg-
ment in this case is reversed and it is ordered that final
judgment be entered for defendants.

*Judgment reversed.*

Lieghley, P. J., and Skeel, J., concur.